SiNNott, Judge,
delivered the opinion of the court:
The amount directly involved in this case is $32; but as we understand, indirectly an amount in excess of $100,000 is involved. The question before us in this case is whether or not the Bohemian Club of San Francisco, California, is a social club within the intent and meaning of section 810 of the revenue act of 1921, 42 Stat. 227, and section 501 of the revenue act of 1924, 43 Stat. 253. The pertinent provision of each of said acts imposes a tax on the amount paid as initiation fees, or dues, “ to any social, athletic, dr sporting club or organization.” The pertinent Treasury regulations appear in regulations 43, article 4, where it is provided that “ every club or organization having social, athletic, or sporting features, is presumed to be included within the meaning of the phrase ‘ any social, athletic, or sporting club or organization,’ until the contrary has been proved, and the burden of proof is upon it.” Article 5 of the same regulations provides that “ any organization which maintains quarters, or arranges periodical dinners or meetings, for the purpose of affording its members an opportunity of congregating for social intercourse, is a ‘ social * * * club or organization,’ within the meaning of the act, unless its social features are not a material purpose of. the organization but are subordinate and merely incidental to the active furtherance of a different and predominant purpose, such as, for example, religion, the arts, or business The tax does not attach to dues or fees of a religious organization, Ringing society, chamber of commerce, commercial club, trade organization, or the like, merely because it has incidental social features; but if the social features are a material purpose of the organization, then it is a ‘social * * * club or organization ’ within the meaning of the act.”
Plaintiff was a member of the Bohemian Club and as such member paid the taxes in question, the Commissioner of Internal Revenue holding “ that the social features ” of said club “are a material purpose of the organization and are of such nature and importance as to bring it within the class of social clubs ” named in the several revenue acts providing *613 for the assessment of taxes on dues of members of a social, sporting, or athletic club.
The articles of incorporation of the club state that “ it is designed to be, and is, a moral, beneficial association, and that its objects are the promotion of social and intellectual intercourse between journalists and other writers, artists, actors, and musicians (professional and amateur) and others associated by reason of knowledge and appreciation of polite literature, science, and the fine arts; and also the collection and preservation of records, memento, and archives illustrating the progress of literature, science, and art on the Pacific coast, and calculated to perpetuate the memory of those who have been, or shall be, instrumental in promoting such progress.” The constitution subsequently adopted states its objects to be for the association of gentlemen connected professionally with literature, art, music, the drama, and also those who by reason of their love or appreciation of these objects may be deemed eligible.
Membership in the club is not confined to the professions above named. The so-called nonprofessional membership exceeds the professional membership, as is shown in Finding Y.
The club has a large, well-appointed, and comfortable club building in the city of San Francisco, of the value of $950,-000, which contains a dining room, seating approximately 350 persons, where the periodical dinners of the club are held. It also has kitchens, storerooms, checking rooms, a barber shop, and a general lounging room, with papers and periodicals on the tables. It also has a card room. A house staff of approximately eighty-six employees is maintained, including a manager, librarian, chefs, bell boys, etc. On the second and third floors of the club are forty bedrooms, some of which are reserved for transient members. Approximately thirty or thirty-five of the unmarried members of the club, occupy rooms therein. The plaintiff herein admitted that the club has the “ complete service that goes with a fully equipped club, where members live and spend their time.” Prior to prohibition the club had a bar and wine room which made an average profit of $1,000 a month. A part of this *614 bar has been cut away for a candy and cigar display stand, where nonalcoholic beverages are served.
Finding VI indicates that the club building is well adapted to social entertainment. Members may enjoy the use of the private dining rooms for the entertainment of their guests. The house rules provide that members of clubs entitled to reciprocal relations with the Bohemian Club shall have the privilege of the club for the period of three months. The by-laws provide that on request of a member a card may be issued to a nonresident of the city of San Francisco living more than a hundred miles therefrom, which shall entitle him to the privilege of the club for a period of two weeks.
The club’s annual report for the year 1920 discusses with ■apprehension the effect of prohibition upon the club’s activities and financing, as well as upon the club’s social entertainments, as is shown in Finding VII. The probative force ■of this on the issues herein is obvious, without comment, as a mere reading of Finding VII will disclose.
The club reports list among the club’s activities annual golf tournaments, trap shooting, and water' sports. The club has entertained many distinguished visitors. Such entertainment was not limited to actors, musicians, authors, and the like. Soldiers, sailors, explorers — in fact, any man who is deemed worthy of being entertained — have been guests of the club. These guests, as a rule, at the entertainment in turn entertained the club. We can see little in the evidence in this case to differentiate the facilities of the club house for entertainment from the facilities for entertainment of the club house in the case of Faculty Club of the University of California v. United States, 65 C. Cls. 154, and John Fisler v. United States, decided by the Court of Claims, October 28, 1928, ante, p. 220, except for the lack of bowling, tennis, and billiards.
One of the predominant purposes of the club, as described in the articles of incorporation, is “ the promotion of social and intellectual intercourse between journalists and other writers, artists, actors, and musicians,” etc.
The above excerpt from the articles of incorporation of the Bohemian Club brings the club clearly within the pur *615 view of the language employed by Judge Moss in the Faculty Club of the University of California case, supra, where he states:
“ The predominant purpose of this club as described in its ■constitution is to promote mutual acquaintance and fellowship among the officers of instruction of the uni/oersity. This is plainly the expression of a purely social purpose.”
Judge Moss makes the further pertinent comment, which is applicable to the Bohemian Club:
“ To hold that ‘ its social features are not a material purpose of the organization,’ or that its purposes and activities are £ merely incidental to the active furtherance of a different and predominant purpose,’ would be contrary to the declared purposes of its organization and to the usual and customary social activities of the club throughout the twenty-six years of its existence.”
We are not unmindful of the contention of plaintiff that the predominant purposes of the Bohemian Club are the furtherance of art, literature, music, and the drama, and that it is an association of gentlemen connected professionally with literature, art, music, and the drama, and also those who by reason of their love or appreciation of these objects may be deemed eligible, and that the few social features it has are merely incidental and that it is in no sense a social club.
We have carefully examined the record, in view of this contention, but are unable to agree with it. The record justifies us in applying to the Bohemian Club the language of Judge Green with reference to the Manufacturers’ Club of Philadelphia in the case of John Fisler v. United States, supra:
“ It is probable that there are few clubs of a purely social nature anywhere in this country that make such elaborate provisions for social enjoyment.”
We have carefully’ read “ The Annals of the Bohemian Club,” the three volumes, nearly 800 pages (plaintiff’s Exhibits I, 7A, and 7B), which delightfully depict the history of the club from 1872 to 1895. They fully justify the claim that the social features of the club are a material purpose of the organization. The social activities therein shown were so extensive as to make it clear that they were a mate *616 rial part of the activities of the club organization. These “Annals” present repeated appeals and references by club members to the spirit of “ good fellowship.” While the “Annals ” chronical many activities on the part of the cliib in the furtherance of “ art for art’s sake,” at the same time ■they present a picture of “ feasts convivial,” of skits, travesties, and burlesques, of Gridiron Club standard and excellence, of—
“ Sport that wrinkled care derides And laughter holding both his sides.”
To ignore the picture presented by the club functions and in the “Annals ” and thereby to hold that the social features therein depicted were not a material purpose of the organization would be to ignore common knowledge of the traits, customs, and habits of man as a gregarious “ social animal.” We can not entertain the view that such social activities were all incidental and subordinate to the furtherance of art, literature, etc., and consequently were not material purposes of the organization.
We have reached the conclusion that the Bohemian Club is a social club within the meaning of the taxing statutes. It is ordered and adjudged that plaintiff’s petition be dismissed.
GREEN, Judge; Moss, Judge; Graham, Judge; and Booth, Chief Justice, concur.