**BANKERS' CLUB OF AMERICA, Inc., v. UNITED STATES.**

**No. K-145.**

Court of Claims.
Feb. 10, 1930.

984

Benjamin B. Pettus, of Washington, D. C. (Colladay, Clifford & Pettus, of Washington, D. C., on the brief), for plaintiff.

Fred K. Dyar, of Washington, D. C., and Herman J. Galloway, Asst. Atty. Gen. (McClure Kelley, of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and WILLIAMS, LITTLETON, GREEN, and GRAHAM, Judges.

BOOTH, Chief Justice.

This tax case, like others of a similar character, turns upon a question of fact. Section 801 of the Revenue Act of 1921 (42 Stat. 291) imposed the tax involved, and is in terms as follows:

"That from and after January 1, 1922, there shall be levied, assessed, collected, and paid, in lieu of the taxes imposed by section 801 of the Revenue Act of 1918, a tax equivalent to 10 per centum of any amount paid on or after such date, for any period after such date, (a) as dues or membership fees (where the dues or fees of an active resident annual member are in excess of $10 per year) to any social, athletic, or sporting club or organization; or (b) as initiation fees to such a club or organization, if such fees amount to more than $10, or if the dues or membership fees (not including initiation fees) of an active resident annual member are in excess of $10 per year; such taxes to be paid by the person paying such dues or fees: Provided, That there shall be exempted from the provisions of this section all amounts paid as

dues or fees to a fraternal society, order, or association, operating under the lodge system. In the case of life memberships a life member shall pay annually, at the time for the payment of dues by active resident annual members, a tax equivalent to the tax upon the amount paid by such a member, but shall pay no tax upon the amount paid for life membership."

The Commissioner of Internal Revenue, by the following regulations, prescribed for the administration of the statute, viz.:

"Art. 3. *Clubs and Organizations Included.*—Dues or membership fees, or initiation fees, paid to any social, athletic, or sporting club or organization, excepting fraternal societies, orders, or associations, operating under the lodge system (see art. 7), if in excess of the amounts specified by the act, are subject in toto to the tax imposed by section 801. The act includes not only 'clubs' but also 'organizations' of a social, athletic, or sporting character.

"Art. 4. *Determination of Character of Club.*—The purposes and activities of a club and *not its name* determine its character for the purpose of the tax on dues. Every club or organization having social, athletic, or sporting features is presumed to be included within the meaning of the phrase 'any social, athletic, or sporting club or organization,' until the contrary has been proved, and the burden of proof is upon it. Every such club or organization, therefore, unless it falls within the express exemption of the act (see art. 7 below), must collect, return, and pay over the tax imposed by the act, unless and until it has satisfied the Commissioner of Internal Revenue that it is not in fact 'social, athletic, or sporting' within the meaning of the act as defined in these regulations (see arts. 5 and 6 below). If any such club or organization desires to claim that it is not in fact 'social, athletic, or sporting,' it shall submit to the collector its charter or constitution and by-laws, together with a statement as to its actual purposes, activities, practices, and facilities, the character of its expenditures, and such other evidence as may be requested. Upon consideration of the evidence submitted the collector will determine whether or not such club or organization is included within the provisions of the act. If, however, the collector is in doubt as to whether or not the club or organization is 'social, athletic, or sporting,' he will refer the statement and accompanying papers to the commissioner for decision. * * *

"Art. 5. *Social Clubs.*—Any organization which maintains quarters or arranges

periodical dinners or meetings, for the purpose of affording its members an opportunity of congregating for social intercourse, is a 'social * * * club or organization' within the meaning of the act, unless its social features are not a material purpose of the organization, but are subordinate and merely incidental to the active furtherance of a different and predominant purpose, such as, for example, religion, the arts, or business. The tax does not attach to dues or fees of a religious organization, singing society, chamber of commerce, commercial club, trade organization, or the like, merely because it has incidental social features, but, if the social features are a material purpose of the organization, then it is a 'social * * * club or organization' within the meaning of the act. An organization that has for its exclusive or predominant purpose religion or philanthropic social service (or the advancement of the business or commercial interests of a city or community) is so clearly not a 'social * * * club or organization' that its possession and use of a building furnished with social-club facilities does not render taxable dues or fees paid to it. Most fraternal organizations are in effect social clubs, but if they are operating under the lodge system payments to them are expressly exempt."

The tax was continued in the Revenue Acts of 1924 and 1926.

The plaintiff's taxes for the period from June, 1924, to May, 1928, amounted to $115,488.75. This amount was paid by the plaintiff, and a claim for refund denied by the Commissioner.

The Internal Revenue Bureau recognized from the beginning that, where the predominant purpose of an organization was other than social, notwithstanding its facilities and furnishings were elaborate, it was not to be classed as social unless it was so in fact. The examples pointed out in the regulations include business organizations as exempt. The Bankers' Club is not primarily a business organization; it is composed of bankers, business and professional men, banded together to provide a place and means for obtaining breakfast and luncheon, as well as facilities for entertaining associates and friends at these appointed hours, in order to save time and discuss the particular matters in which they are especially interested. The club's location, its equipment and appointments, attract to it a large membership, most of whom are actively engaged in business affairs close by, and whose purpose in becoming a member is to secure a convenient and available place

for luncheon. The club does not cater in any wise to the usual athletic and sporting features of social clubs; it possesses no golf course, no tennis courts, no outside properties of any character, and has not during its entire existence featured any enterprise looking towards the usual and customary relaxations from the daily routine of busy men, such as social clubs are especially intended for. Luncheon is its principal meal. An insignificant number of members sometimes take breakfast at the club; dinners are not served at all; and at 5 o'clock in the afternoon its doors are closed. The evidence clearly establishes that the membership is not given to loitering in the lounge rooms; that few of its members remain at the club beyond 2:30 in the afternoon, and events of an unusual character are sporadic and infrequent, limited to gatherings of business men in furtherance of their common enterprise, or meetings of directors having charge thereof. Ladies are admitted to the ladies' dining room for luncheon when accompanied by a member. This, according to the record, is the limit of the privilege extended to them.

Without going further into a discussion of the facts which the findings disclose, the single defense relied upon seems to be rested upon the receipts of the club, the sumptuousness of its quarters, and its availability for social purposes. It is true that the club's furnishings are elaborate and expensive, its quarters inviting and especially designed for its intended purpose, its resources great, its income large, and its membership totals in excess of 2,200. Nevertheless the record herein fails completely to establish that the continued habits of its membership and the general and established conduct of its management indicate any other purpose than to set up and maintain a central meeting place for men of means to have their luncheon and discuss during the noon hour the affairs with which they are concerned. Neither the Taxing Act nor the regulations of the Bureau discriminate between an imposing organization and one less ornate and attractive. The issue is the purpose of the club, and, if it falls within the class specifically pointed out by the act and the regulations as exempt from taxation, we cannot refuse to so hold, especially so when there exists no proof of any probative worth to the contrary.

The case, it seems to us, comes within the decision of this court in the following cases: Aldine Club v. United States, 65 Ct. Cl. 315, and Chemists' Club v. United States, 64 Ct. Cl. 156.

The plaintiff is entitled to judgment for $115,488.75, with interest. It is so ordered.

WILLIAMS, LITTLETON, GREEN, and GRAHAM, Judges, concur.