## ARMY AND NAVY CLUB OF AMERICA v. UNITED STATES.

### No. L–495.

Court of Claims.
Nov. 2, 1931.

Raymond M. Hudson, of Washington, D. C. (George W. Peterson, of St. Paul, Minn., on the brief), for plaintiff.

Joseph H. Sheppard, of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

taxes on club dues and initiation fees in the period from June 29, 1925, up to and including May 31, 1929.

The evidence shows that the plaintiff is a club organization composed largely of Army and Navy officers, or those who have served in such capacity. The objects of the club, as stated in its original charter, have been "to encourage military and naval science and for the mutual benefit of its members by social intercourse with those who have served in the military and naval affairs of the United States or foreign governments."

The issue is largely one of fact, and the case is one which, under the ruling of the Supreme Court, the ultimate fact which controls the decision must be determined by this court. The plaintiff claims that it is not a social club, and therefore is not subject to the tax assessed against it. The commissioner ruled otherwise, and the only question in the case is whether his ruling is correct under the facts shown by the evidence.

The evidence shows that the club has about 2,400 members and occupies a twelve-story and basement clubhouse building in the city of New York of the value of approximately $550,000. It would take too much space to set out in the opinion the manner in which this building is equipped, which is described in finding 7, and also in finding 9. It is sufficient to say that it is the practice of the club to give numerous and varied entertainments. Besides this, lectures on military and patriotic topics have been given under the auspices of the club. The club was operated at a loss in the years 1925 to 1929, and a deficit would have occurred had not funds been received from life and founder members. It has no other revenue than that obtained from dues and initiation fees, payments made by organizations for using the rooms, and serving meals to its members.

The purpose of the club and what it accomplishes are set out in finding 14, from which it appears that it serves to enable military and naval men and men interested in military and naval matters to make social contacts, and thereby promote and aid the activities of the Army and Navy service and stimulate interest on the part of civilians in the welfare and development of the Army and Navy. Also, the club, through its members, encourages military training and "preparedness," which is evidently one of its main purposes. Preparedness is generally understood to mean the possession on the part of this country of a larger and better Army and Navy.

B. B. Pettus, of Washington, D. C. (E. F. Colladay and Colladay, McGarraghy, Pettus & Wallace, all of Washington, D. C., on the brief), for plaintiff.

Fred K. Dyar, of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, WHALEY, WILLIAMS, and LITTLETON, Judges.

GREEN, Judge.

The plaintiff in this case seeks to recover $22,591.24 and interest thereon alleged to have been wrongfully collected from it as

It is contended on behalf of the plaintiff that the predominant purpose of the club is patriotic and professional and not social. This may be conceded, but this fact is not necessarily controlling. We think it quite clear that the numerous and varied social features of the club show that they are a material part of its activities and not merely incidental to the patriotic work of the club, which could be carried on without them. The evidence shows that they are made an inducement to bring additional members into an organization that needs their financial aid in order to continue its existence, and in this way have become an essential part of those elements which go to determine whether or not a club is a social organization within the meaning of the law.

It has been requested in the argument for the defendant that the court define the meaning of the term "social club," but it ought to be obvious that no exact definition thereof can be given. If it had been possible to do so, the Treasury Regulations would have defined it long before this time. The word "social" itself has no exact definition. A faint and shadowy line separates activities which are social from those which are not. Another feature that adds difficulty in these cases is that the mere fact that a club has some social activities does not necessarily make it a social club within the meaning of the law, for no club can exist without having something social in its nature, and this must have been well understood by Congress. The only rule that can be laid down, as we think, is that, if the predominant purpose of the organization is not social, and its social activities are merely incidental to the furtherance of this different and predominant purpose, then the club is not a social one within the meaning of the law. But both of these matters must exist in order to create an exemption from the tax.

This case presents more than the usual difficulties in the way of its decision. It appears that the predominant purpose of the club was to further the interests of the Army and Navy and to advocate and create a public sentiment in favor of "preparedness." Had the social element been merely incidental to this purpose, the club would have been exempt from the tax. But, as we have already shown, the social features became an essential element of its activities for the purpose of increasing its membership, aiding in its financial support, and thus helping to carry out its purposes. When the social features are numerous and so used, we think

they are not merely incidental, and the club is subject to the tax.

It follows that the petition must be dismissed, and it is so ordered.