## HOUSTON CLUB v. UNITED STATES.
### No. M-74.

Court of Claims.
May 2, 1932.

Robert Ash, of Washington, D. C. (J. A. Phillips, on the brief), for plaintiff.

Fred K. Dyar, of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

BOOTH, Chief Justice.

This case, precisely similar in most of its aspects with numerous others of the same character, involves a suit to recover a refund of taxes paid during the years 1927, 1928, and 1929. No jurisdictional issue arises and the single debatable question of fact is whether the plaintiff organization is a social club within the meaning of section 801 of the Revenue Act of 1921 (42 Stat. 291) and section 501 of the Revenue Acts of 1924 (43 Stat. 321) and 1926 (44 Stat. 92 [26 USCA § 872 note]).

Plaintiff club is an incorporated organization, incorporated under the laws of Texas, and during the taxable years in issue occupied

under leasehold the seventh, eighth, ninth, and tenth floors of the Chamber of Commerce Building in Houston, Tex. The activities of the club were restricted to the business welfare of the community. It served in fact as an adjunct to the local chamber of commerce, affording its membership a convenient, adequate, and comfortable place for conferences, meetings, and gatherings related almost exclusively to the promotion of business and commerce. Its membership was made up of the city's representative business men, and almost 60 per cent. of the members of the chamber of commerce were members of the club, and a large majority of the club's membership were also members of the chamber of commerce. The record unquestionably establishes the fact that the plaintiff club was intended as a somewhat more exclusive organization than the chamber of commerce; its membership was limited to 700 resident members, whereas the chamber of commerce was not limited in this respect, and the two organizations functioning in unison comprehended practically all the active and interested business men of the city. The evidence positively discloses that during the taxable years involved, and we are not concerned with others, the club was persistent and active in forwarding all business enterprises which concerned the localities of its influence, and that its primary and predominant purpose was to extend the business welfare of Houston. The findings show that the club maintained dining rooms, and that the club building was open to members from 7:30 a. m. until midnight, and it is clear from the record that while billiard and pool tables were available for play, notwithstanding their use was gratis they were seldom used. No card rooms were provided and the club did not in any way encourage or support athletics—golf or tennis. The principal source of revenue, aside from dues and initiation fees, was from the proceeds of luncheons served its membership. A very few members took breakfast and dinner at the club, and while the ladies of a member's family were permitted the privileges of the dining room, very few availed themselves of the same. As a matter of fact, after the passage of the luncheon period the clubrooms were more or less deserted, and frequently in the evenings as early as 9 o'clock the lights were extinguished and the clubrooms dark. The private bedrooms maintained by the club were a liability and not an asset; in fact, the club management sought to give them up, but the owner of the premises declined to allow it under the terms of the lease. A few of the rooms were occupied, the remainder vacant.

We are unable to find in the record facts which characterize the club as predominantly social. It must be conceded that the usual and customary events which go to make up distinctly social activities are conspicuously absent—no dances, banquets, no encouragement of outdoor sports or games, no surroundings or facilities, provided which tend in any way to divert business men from the ordinary duties and activities of their calling. The club of course afforded a convenient place of meeting for luncheons. It likewise afforded a few restricted advantages not obtainable save by gatherings of this character. That was one of the intended purposes of its organization, and, as this court has said, "no club can exist without having something social in its nature, and this must have been well understood by Congress." Army & Navy Club of America v. United States, 53 F.(2d) 277, 282, 72 Ct. Cl. 684. This court said in the case of the Aldine Club v. United States, 65 Ct. Cl. 315, 319: "And though there may be social features incident to its general activities, yet if the social feature is a subordinate and merely incidental feature to the 'predominant' purpose of the organization, it is not a social club. This must be true unless all clubs where people congregate are social clubs, 'because practically all clubs may be said to have a feature of the social, using the term as having to do with human intercourse.' Chemists' Club [v. United States], decided June 6, 1927, 64 Ct. Cl. 156."

The record we think brings this case within the Aldine Case, supra, in so far as the taxable years 1927, 1928, and 1929 are concerned. The undisputable weight of the testimony is to the effect that during the above period the plaintiff club was in effect an auxiliary organization to the chamber of commerce; that the club organization co-operated with the chamber of commerce, and that its predominating purpose was centered upon the promotion, advancement, and prosperity of business interests and commerce. What few social activities obtained were confined to those usual and customary contacts which always attend a gathering of individuals, even though the purpose of the gathering is distinctly for another and a settled purpose.

Judgment for plaintiff for $17,189.85. It is so ordered.