**BLOCK HALL, Inc., v. UNITED STATES.**
No. M–121.

Court of Claims.
May 2, 1932.

WHALEY, Judge, dissenting.

922

Allen G. Gartner, of Washington, D. C., for plaintiff.

Fred G. Dyar, of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and WILLIAMS, LITTLETON, GREEN, and WHALEY, Judges.

BOOTH, Chief Justice.

Plaintiff is a membership corporation incorporated under the laws of New York. The corporation was organized as a luncheon club in 1926 by a number of the younger business and professional men who had offices nearby its location. The club now occupies its own building, a seven-story structure situated at 21–23 South William street, New York. From June, 1928, to June, 1929, inclusive, the plaintiff paid $20,103.60 taxes to the collector of internal revenue for the Second district of New York. The taxes paid were paid under protest, and were exacted of the club under section 413 of the Revenue Act of 1928 (26 USCA §§ 872, 872 note) which provides as follows:

(a) Section 501 of the Revenue Act of 1926 is amended to read as follows:

Section 501. "(a) There shall be levied, assessed, collected, and paid a tax equivalent to 10 per centum of any amount paid—

"(1) As dues or membership fees to any social, athletic, or sporting club or organization, if the dues or fees of an active resident annual member are in excess of $25 per year; or

"(2) As initiation fees to such a club or organization, if such fees amount to more than $10, or if the dues or membership fees, not including initiation fees, of an active resident annual member are in excess of $25 per year.

"(b) Such taxes shall be paid by the person paying such dues or fees.

"(c) There shall be exempted from the provisions of this section all amounts paid as dues or fees to a fraternal society, order, or association, operating under the lodge system, or to any local fraternal organization among the students of a college or university. In the case of life memberships a life member shall pay annually, at the time for the payment of dues by active resident annual members, a tax equivalent to the tax upon the amount paid by such a member for dues or membership fees other than assessments, but shall pay no tax upon the amount paid for life membership.

"(d) As used in this section, the term 'dues' includes any assessment irrespective of the purpose for which made; and the term 'initiation fees,' includes any payment, contribution, or loan required as a condition precedent to membership, whether or not any such payment, contribution, or loan is evidenced by a certificate of interest or indebtedness or share of stock, and irrespective of the person or organization to whom paid, contributed, or loaned."

(b) Subsection (a) of this section shall take effect on the expiration of thirty days after the enactment of this act.

A timely claim for refund of the above taxes was filed with the Commissioner of Internal Revenue on or about June 17, 1929, and rejected by that official on December 26, 1929. This suit is for the recovery of the full amount of taxes paid as above, and the asserted right to a judgment is rested upon a contention that the club is not a "social, athletic or sporting one," and hence is exempt from taxation under the foregoing revenue act.

Membership in the club is not signally exclusive, i. e., the expense of initiation and dues is not so extravagant as to preclude in normal times from its privileges a large class to whom it caters. When the testimony was taken the club had a total membership of 789, divided into 300 life, 440 resident, and 49 nonresident members. The building which it occupied was a commodious one set apart in reservations for its activities. The main dining room occupied nearly all of the third floor, accommodated 250 persons, and two-thirds of the fourth floor was also used as a dining room, where space was available to serve 125 luncheons. The club rooms were opened at about eleven in the morning, and remained open until seven in the evening. No breakfasts or din-

ners were served, and no sleeping rooms were provided for members. The club at no time sponsored card parties, dinner or other dances, theatrical performances or lectures. There were no pool or billiard tables for members, no facilities for card playing, and, as the findings show, no catering to or encouragement of the varied and multitudinous forms of amusement and diversion which enter into and make up what is called a social club; an organization where social activities predominate, are material to the organization, and are not merely incidental. Army and Navy Club of America v. United States, 53 F.(2d) 277, 72 Ct. Cl. 684.

We think, without going into minute detail upon the social features of the case, that the findings conclusively show that the club is not and may not be classed as an organization where its social activities predominate or are more than merely incidental; in fact, the indisputable testimony clearly establishes that a decided minimum of social activities marked the daily conduct and doings of its membership, and that the organization was not incorporated for and did not intend to supply the opportunity or provide for any form of social intercourse other than that which incidentally attends any usual and ordinary gathering of people.

Article 37 of the Commissioner's regulations (43), promulgated for the administration of section 413 of the Revenue Act, reads as follows: "Art. 37. *Athletic or Sporting Clubs.*—Tennis, golf, boxing, boating, canoe, fishing, and hunting clubs, and any organization (of which the members are individuals) for the practice or promotion of athletics or sports, are included within the meaning of the words of the act, 'athletic, or sporting club or organization.' A local, sectional, or national 'athletic or sporting' association, the membership of which is composed wholly or partly of member clubs, is not within the scope of the act. The possession and use of a gymnasium, swimming pool, or other athletic facilities by an organization having religion or philanthropic social service for its exclusive or predominant purpose does not bring the organization within the class of athletic or sporting clubs or organizations."

The entire sixth and one-half of the seventh floor of the plaintiff's club building are occupied by squash racket and tennis courts; rubbing, rest, and lavatory rooms are provided in connection with the courts. The courts are two stories high, and a balcony of

sufficient size to accommodate about twenty persons is provided on the seventh floor, from which spectators may view the games. Within this space there also exists a small gymnasium 15x17 feet, a locker room for athletic costumes, four shower baths, and another lavatory. A handball court is laid out upon the roof, and, while infrequently used, is available for use. All these athletic facilities were available to members during the hours the clubhouse was open. They were used to their capacity during the luncheon hour, and from five to six-thirty in the afternoon. It is conceded that during cool weather they were in demand to their capacity during the midday period. At least twenty members could play at a time for one-half hour on the squash racket courts, and four could play at a time on the handball courts. The gymnasium was equipped with Indian clubs, dumbbells, chest weights, and a rubbing table. Facilities were supplied for furnishing light luncheon and food to the players when playing, and a fee of fifty cents a half hour was charged each player for use of the courts, as well as an additional fee of fifty cents where an attendant, who was constantly on hand, was called in to furnish the requisite number to play a game. Four tournaments were held annually by the club, viz., an open club championship, a handicap and championship tournament for each of the games of squash racket and squash tennis. These tournaments commenced at six in the evening, were open to and attended by members of the club, and special dinners were arranged for and served upon these occasions. The club on two or three occasions sponsored exhibition matches of squash games between its own and another good player from some other club. All these exhibitions were well attended; the balcony was filled to its capacity, special dinners were served on each occasion, and speeches were made by the president of the club and other members to stimulate interest in the club. No admission fees were charged members to witness the contests, and the dinners served were not at the club's but at the individual member or members' expense. Was then this club an athletic or sporting club within the meaning and intent of section 413 of the Revenue Act? The Commissioner's regulation designates a club as an athletic or sporting one in the event any organization is intended "for the practice or promotion of athletics or sports." It is self-evident that Congress intended to tax all clubs which had for their purpose nothing more than social gatherings and/or the practice or promotion of athletics or sports.

924

Clubs intended to promote and foster the development and expansion of the various serious activities of the community or those given to the single purpose of serving food to its membership, notwithstanding they may have in a measure a dual activity, one incidentally social and the other nonsocial, were not, as held by the courts, within the purview of the revenue law, and, in the absence of any cited decisions to the contrary, we know of no other established rule to apply to the decision of this case. If the athletic and sporting activities of the plaintiff club were merely incidental and intended, as the plaintiff insists, to provide limited facilities for daily exercise to the end of maintaining physically fit those who availed themselves of the privileges, the contention would have weight. The record, however, we think negatives the insistence. The club gives over an extensive and very large portion of its clubhouse to sports; it omits no detail in providing the essential appurtenances which accompany the indulgence in the games, such as attendants, rubbing rooms, shower baths, lockers, and lavatories. The club maintains an interest in the games by encouraging tournaments which attract its membership in large numbers, events which not only contribute to a constant interest in the games, but serve to increase its financial receipts from its dining rooms. Contests are arranged between its own and members of other clubs devoted exclusively to proving superior skill in the playing of the games provided for, and, so far as we are able to discern from the record, the club omits nothing to make the athletic and sporting activities of the organization attractive and noticeable. Speeches are delivered by officials of the club on the occasion of these events, speeches which it is conceded are intended to augment interest in and increase the membership of the same, and made to an assembly brought together by an athletic event, undoubtedly of great and permanent importance to the club. As a matter of fact, the club's athletic and sporting events constitute its outstanding activities; they are the attractive features which hold the attention of its membership and draw them in large numbers into the clubhouse when they occur; and manifestly, if it were not for the skill developed in its membership by the constant playing of games, the tournaments would be devoid of interest and the attendance thereon negligible. It is, we think, of somewhat minor significance in this case that a minority of its membership actually avail themselves of the privileges now in issue. A vast number of members of athletic and sporting clubs do not actually play the provided for games, swim in the swimming pool, or indulge in any way in physical exercise. Nevertheless, the facilities for so doing are provided, the club incurs great expense to provide them, and emphasizes their presence and the advantages to be obtained by their use. It is not necessary for a club to be a professional, athletic or sporting club to come within the taxing act. Congress was not alone intending to tax clubs engaged exclusively in promoting professional entrants into professional events in the athletic and sporting field. In our opinion, if the athletic and sporting activities of the club constitute the material and attractive factor which enables it to go forward and continue its existence, if these activities are the outstanding features which characterize the organization, and are recognized by its membership as segregating the organization from a mere social or professional club, it cannot be said that they are merely incidental. Beyond doubt the extent of the facilities set apart and provided for by the club, the completeness and efficiency of the equipment supplied, taken in connection with the sustained interest and persistent promotion by the club and its membership of the athletic and sporting events mentioned, render it impossible to hold that the club does not "practice or promote athletics or sports." We think it not only does do so, but that it forms a material and most substantial part of its activities. The petition will be dismissed. It is so ordered.

WHALEY, Judge, dissents.