**SQUANTUM ASS'N v. PAGE, Collector of Internal Revenue.**

No. 2468.

District Court, D. Rhode Island.

Feb. 15, 1934.

Harvey S. Reynolds and Greenough, Lyman & Cross, all of Providence, R. I., for plaintiff.

Henry M. Boss, Jr., U. S. Atty., of Providence, R. I. (E. Barrett Prettyman, Gen. Counsel, Bureau of Internal Revenue, and L. H. Baylies, Bureau of Internal Revenue, both of Washington, D. C., of counsel), for defendant.

McLELLAN, District Judge.

Having heard the parties and their evidence, I continued the trial until to-day in order to give counsel an opportunity in the course of the trial to preserve their rights in connection with my findings and rulings.

The main question is whether the plaintiff is a social club, within the meaning of the Revenue Act.

The plaintiff, a Rhode Island corporation, created by an act of the General Assembly of Rhode Island in 1872, seeks recovery of the amount of various payments made to the defendant collector of internal revenue during the years 1927 to 1930, both inclusive. The total amount of these payments is $10,-

762.25. The plaintiff's total claim is for this sum, plus interest on the various items entering into it from the dates of the respective payments, a schedule whereof is annexed hereto and made a part hereof.[1]

The collections were made under the provisions of section 501 of the Revenue Act of 1926 (26 USCA § 872 note) and section 413 (a) of the Revenue Act of 1928 (26 USCA § 872). Claim for refund was based on the ground that the corporation was not a social, athletic, or sporting club or organization within the meaning of these acts. The claim having been rejected by the Commissioner of Internal Revenue, this action was brought. If the plaintiff was a social, athletic, or sporting club or organization, the action cannot be maintained. Otherwise it can be maintained.

The ensuing findings of fact are more detailed and comprehensive than I should have deemed necessary but for the fact that the question involved seems to me a close one and counsel for each party has requested me to make numerous findings. Accordingly, an attempt will be made to make practically all such requested findings as are warranted by the evidence.

The plaintiff's charter recites that "it is created as a body corporate and politic for the purpose of culture" with power to hold real and personal property in an amount not exceeding $100,000. The charter provides that the capital stock of the association shall not exceed $20,000, divided into shares of $100 each; that no person except as trustee shall own more than one share; and that the expenses of the association including the "cost of regular weekly entertainments" of the association shall be defrayed by assessments upon stockholders in such manner as is prescribed by the by-laws. The by-laws, pursuant to this provision of the charter, provide for an annual assessment upon the stockholders of the association to be fixed at the annual meeting of the association. Such annual assessment for each of the years 1927, 1928, and 1929 was $100, and for 1930, $150.

The plaintiff's capital stock consists of 200 shares with a par value of $100 each, and the ownership of one share and "being voted in as an associate corporator" constitutes membership. The officers of the association consist of a president, vice president, treasurer, and secretary. Provision is made in the by-laws for an executive committee, committee on members, committee on by-laws, and an audit committee. The executive committee has three subcommittees, entitled, respectively, committee on entertainments, committee on buildings and grounds, and committee on printing. Under the rules governing the executive committee, "the committee on entertainments" has "charge of all entertainments and the purchase of all supplies for the same."

The by-laws provide the course to be pursued in connection with applications for membership, which is limited to 200 and consists of business and professional men. The

[1] Schedule.

| Date Paid. | | Amount Paid. | Date Paid. | | Amount Paid. |
|---|---|---|---|---|---|
| 1927 | January 27 | $395.00 | 1929 | January 30 | 474.00 |
| | February 26 | 40.00 | | February 25 | 284.00 |
| | March 28 | 5.00 | | March 27 | 18.00 |
| | April 27 | 5.00 | | April 27 | 282.00 |
| | May 28 | 670.00 | | May 29 | 612.00 |
| | June 29 | 215.00 | | June 28 | 386.00 |
| | July 26 | 15.00 | | July 30 | 116.00 |
| | August 30 | 32.00 | | August 27 | 92.00 |
| | September 29 | 30.00 | | September 25 | 68.00 |
| | October 28 | 20.00 | | October 28 | 122.00 |
| | November 3 | 91.50 | | December 28 | 637.50 |
| | December 27 | 480.00 | 1930 | January 29 | 600.00 |
| 1928 | January 30 | 415.00 | | February 27 | 97.50 |
| | February 29 | 60.00 | | April 24 | 7.50 |
| | March 29 | 5.00 | | May 28 | 1,087.50 |
| | April 28 | 5.00 | | June 26 | 397.50 |
| | May 29 | 445.00 | | July 28 | 300.00 |
| | June 23 | 455.00 | | August 28 | 15.00 |
| | July 30 | 45.00 | | September 29 | 52.50 |
| | August 29 | 10.00 | | October 25 | 60.00 |
| | September 26 | 35.00 | | November 7 | 45.00 |
| | October 30 | 30.00 | | December 12 | 500.00 |
| | November 5 | 15.00 | | December 31 | 443.75 |
| | December 28 | 546.00 | | | |

membership was not complete during any of the years in controversy. During the year 1930 it was approximately 175.

Under the by-laws, members have the privilege of entertaining guests at the club at any time where the guests do not reside or have a place of business within fifteen miles of the clubhouse. Members also have the privilege of introducing annually as guests two persons residing within the fifteen-mile limit at "any entertainment of the club, on a legal holiday (other than regular entertainment)." On ladies' days, so called, a member may introduce as guests as many persons as the executive committee shall from time to time prescribe without restriction as to residence. The residence provision is not always strictly enforced.

According to the by-laws, entertainments may be given on the club grounds by any member at any time which do not conflict with regular programs of the association. During each of the tax years this privilege was used more or less by members of the association. Members who invite guests to the club are required to pay all the expenses of entertainment, and no one except a member or guest is allowed the privileges of the club grounds.

The club is located on Narragansett Bay, four or five miles from the business district of Providence. The club property consists of a tract of land and buildings. The buildings comprise a two-story clubhouse, a dining hall seating 200 guests, an oyster house where clams and oysters are served in season, steward's quarters, a billiard hall housed in a separate frame building, heated only by an iron stove and containing four tables which, during the tax years, were over thirty years old and out of condition (though they could be used free of charge by members and guests and were used only occasionally by a few members of the club). There are also service buildings and garages. The association also has a summer house on Huckleberry Island, situated near the main club property. The club is accessible either by land or water; a new landing at a cost of some $1,600 having been built in the year 1930.

Each year the executive committee at a meeting usually held in March makes formal arrangements for a schedule of twenty so-called "regular" or "field days" to be held at the club on consecutive Wednesdays running from the late spring to the early fall. At such "field days" the club serves to members and their guests a luncheon from midday to 2 o'clock in the afternoon and a clam bake or dinner at 6 o'clock in the afternoon. In addition to such "field days," the club has five or six "special days" during the year, consisting of two "ladies' days," one in the spring and the other in the fall, a New Year's dinner, a Washington's Birthday dinner, and a planked shad dinner in the early spring. In the year 1928, an election night dinner was held in November for the members and guests. The menus for such "special days" and for the dinners and luncheons served on "field days," as I am requested to find, consist of "sea food and delicacies, including caviar, filet of anchovy, quahaug pie, roast squab, hothouse chicken, lobster salad, etc." The charge per plate for guests attending both the regular and special day dinners was $5, except on rare occasions when a $4 charge was made.

During 1927, the expenditures for provisions was something in excess of $7,000, for sea food about $3,000, and for beverages about $2,500; and during the years 1928, 1929, and 1930 somewhat similar amounts were expended for similar items. While the cost of food for the "regular days" was included in the yearly assessment of members, who were entitled to luncheons and dinners on those days without charge, members attending "special days," such as ladies' days, New Year's dinner, and Washington's Birthday dinner, were required to pay the fixed guest charge of $5 per plate for themselves and guests. The average attendance on the "regular days" was about 41 in 1927, 48 in 1928 and 1929, and 47 in 1930. The attendance of members and guests on "special days" averaged 128 in 1927, 92 in 1928, and 1930, and 91 in 1929.

The association maintained no restaurant. It gave no dances, receptions, teas, musicales, lectures, or card parties. It had no swimming, squash, tennis, golf, or other sporting facilities, and no reciprocal arrangements with other clubs. Nor did it have a radio, victrola, lounge, library, books, magazines, newspapers, or bedrooms. At the dinners and luncheons there were no speeches and no incidental music, and the club provided no flowers or decorations. There were four or five regular employees, and no more, at the club.

The club was not open at night, except in 1928 and 1929, when the regular clam bakes were served at 6 o'clock in the afternoon.

The taxes collected by the defendant from the plaintiff during the years 1927 to 1930, both inclusive, on initiation fees and dues, were paid by the defendant into the Treasury

of the United States in the performance of his official duty, and, in collecting said taxes, the defendant acted under the directions of the Secretary of the Treasury.

On January 23, 1931, the plaintiff filed in the office of the collector of internal revenue a claim for refund of the taxes paid, together with interest thereon, and this claim was denied under date of June 20, 1931.

Basing my conclusion of fact upon the foregoing findings and upon all the evidence in the case, I find, as requested by the plaintiff, that, during the years in question, the club's predominant purpose and activity consisted of the furnishing of luncheons and dinners composed principally of sea food prepared in particular ways which were traditional with the plaintiff association. The food was highly regarded for its quality and method of preparation, and the predominant interest of the members was in obtaining at the club the particular type of food there served. While members might engage the club facilities for private parties, the club property ordinarily was not used by members on any days except the regular and special days, and then chiefly just before, during, and after meal times.

Manifestly the plaintiff was neither an athletic nor a sporting club or organization, within the meaning of the statute; nor, giving due weight to what was done as well as to what the charter and by-laws authorized to be done and to Regulations 43 promulgated by the Commissioner of Internal Revenue, a copy of the pertinent parts of which appears in the footnote,[2] do I think that the plaintiff should be regarded as a social club or organization. The social features contemplated by the statute and regulations must be more extensive than those resulting from the more social intercourse between the members incident to meetings or dinners attended by them. As stated in Block Hall, Inc., v. United States, 74 Ct. Cl. 600, 57 F.(2d) 918, 923: " * * * Congress intended to tax all clubs which had for their purpose nothing more than social gatherings and/or the practice or promotion of athletics or sports. Clubs intended to promote and foster the development and expansion of the various seri-

ous activities of the community or those given to the single purpose of *serving food* (italics mine) to its membership, notwithstanding they may have in a measure a dual activity, one incidentally social and the other nonsocial, were not, as held by the courts, within the purview of the revenue law. * * * "

While the case at bar differs from Block Hall, Inc., v. United States, supra, in what may be deemed several rather important respects, in that in the instant case the club is located several miles from the business district, in that its membership was not general, as indicated by the rules applicable to the admission of members, and in that the principal meals served cannot be regarded as a business men's luncheon, notwithstanding the liberal provisions of its charter and by-laws, the main purposes and activities of the club were, however, the serving of food, and I find as a fact that the social aspects were merely incidental thereto. See Bankers' Club of America, Inc. v. United States, 69 Ct. Cl. 121, 37 F.(2d) 982; Aldine Club v. United States, 65 Ct. Cl. 315; Builders' Club of Chicago v. United States, 74 Ct. Cl. 595, 58 F.(2d) 503; Houston Club v. United States, 74 Ct. Cl. 640, 58 F.(2d) 487; Cosmos Club v. United States, 70 Ct. Cl. 366, 42 F.(2d) 321; City Club of St. Louis v. United States (D. C.) 24 F.(2d) 743; Washington Club v. United States, 69 Ct. Cl. 621, 49 F.(2d) 656; The Cordon v. United States, 71 Ct. Cl. 496, 46 F.(2d) 719; Quadrangle Club v. United States (C. C. A.) 64 F.(2d) 80; Abbott v. United States, 66 Ct. Cl. 603; Fleming v. Reinecke, Collector (D. C.) 43 F.(2d) 257; Fisler v. United States, 66 Ct. Cl. 220; Army & Navy Club v. United States, 72 Ct. Cl. 684, 53 F.(2d) 277; Faculty Club of the University of California v. United States, 65 Ct. Cl. 754; Town Club of St. Louis v. United States (D. C.) 60 F.(2d) 628; and Women's University Club of Seattle v. Poe (D. C.) 52 F.(2d) 447.

The defendant's request for a ruling that the action cannot be maintained and for judgment is denied, subject to the defendant's exception.

In view of the foregoing findings of fact, it is unnecessary to pass upon the plaintiff's

---

[2] Regulations 43, art. 35. " * * * The purposes and activities of a club and not its name determine its character for the purpose of the tax. * * * "

Article 36. "Any organization which maintains quarters or arranges periodical dinners or meetings, for the purpose of affording its members an opportunity of congregating for social intercourse, is a 'social * * * club or organization' within the meaning of the Act, unless its social features are not a material purpose of the organization but are subordinate and merely incidental to the active furtherance of a different and predominant purpose. * * * "

motion for a ruling that as a matter of law the action can be maintained.

The plaintiff is entitled to judgment in the amount of $10,762.25, plus interest on the items entering into that sum from the respective dates set forth in the annexed schedule.