## TURKS HEAD CLUB v. BRODERICK.

### Civ. A. No. 407.

District Court, D. Rhode Island.

April 16, 1947.

Edward W. Day and Percy W. Gardner, both of Providence, R. I., for plaintiff.

George F. Troy, U. S. Atty., and Edward M. McEntee, Asst. U. S. Atty., both of Providence, R. I., and Douglas W. McGregor, Asst. Atty. Gen., and Andrew D. Sharpe and A. Barr Comstock, Sp. Assts. to Atty. Gen., for the Government.

HARTIGAN, District Judge.

This is a civil action brought under the Act of March 3, 1911, 36 Stat. 1092, 28 U.S. C.A. § 41(5), for a refund of taxes, with interest, assessed against and collected from the Turks Head Club, in the total amount of $3,161.09, for the months of May, June, July and August, 1944, these taxes having been imposed on the amounts paid by the members of the Turks Head Club as dues or membership fees.

The factual situation and questions presented for a decision are stated in the following stipulation entered into by the parties:

"It is hereby stipulated by the parties in the above entitled action that the following is a true statement of material facts, that these facts shall constitute evidence in the case, and that either party may offer additional evidence at the trial not inconsistent therewith.

"1. The plaintiff was organized in 1912 as a non-businesss corporation under the provisions of Class III, Section 11 [c. 212] of the Rhode Island General Laws of 1909.

"2. The plaintiff has never been subject to the Federal corporation income tax, or the Rhode Island corporation tax, or the Restaurant Maximum Price Restrictions under the regulations of the Office of Price Administrator. The plaintiff applied for and was granted exemption from said Federal income tax, and from said price restric-

tions. Except for local personal property taxes, and the taxes refunded as set forth in paragraph '7' hereafter the plaintiff has never paid taxes of any kind other than taxes of the type involved in this action, which were collected from its members and paid over to the Government.

"3. The purposes of the Club as expressed in its charter, are the 'maintenance of club rooms for the use of its members, the promotion of the business interests of its members, the advancement of the mercantile and industrial life of the City of Providence and vicinity and the encouragement of social intercourse.'

"4. The defendant is the Administratrix of the Estate of the late Joseph V. Broderick, who died after this action was commenced, and who was formerly, and when the taxes involved therein were assessed and collected, Collector of Internal Revenue for the District of Rhode Island.

"5. This action was brought to recover, with interest and costs, the sum of $3,161.09, this being the amount assessed in pursuance of the provisions of Section 1710 of the Internal Revenue Code as amended by Section 543(a) of the Revenue Act of 1941, 26 U.S.C.A. [Int.Rev.Code, §] 1710, and the applicable Treasury Regulations as taxes on the amount of dues, membership fees and initiation fees paid to the plaintiff with said taxes, by its members during the months of May, June, July and August, 1944, on the ground that the plaintiff was a 'social club' within the meaning of said statute and regulations.

"6. Said taxes in said amount were paid to the Collector of Internal Revenue during the months of June, July, August and September 1944, respectively, and thereafter in August and September, 1944, the plaintiff filed claims for refund, copies of which are attached to the complaint and marked 'Exhibits A, B, C and D'. These claims were rejected by the Commissioner of Internal Revenue by letter dated January 6, 1945, a copy of which is attached to the complaint and marked Exhibit E.

"7. On January 25, 1930, the Commissioner of International Revenue ruled that during the period between April 20, 1925, and March 26, 1929, the plaintiff was not a social club within the meaning of Section 413 of the Revenue Act of 1928, and the applicable Treasury Regulations, and that the dues and fees paid by its members were not subject to the taxes imposed thereunder and collected by the then Collector of Internal Revenue during said period, and the plaintiff's claim for a refund of said taxes was allowed.

"8. The only issues in this case are (a) whether during the months of May, June, July and August, 1944, the plaintiff was a social club within the meaning of the applicable statute, as interpreted by the applicable Treasury Regulations, and, as such, subject to the taxes for the recovery of which this action was brought; (b) whether the plaintiff is barred from recovery because no powers of attorney were filed with the Bureau of Internal Revenue on behalf of its members.

"9. The following is a statement of the plaintiff's activities and facilities during the tax period in question:

"(a) During the tax period in question the plaintiff was (and still is) located on the sixteenth floor of the Turks Head Building in the City of Providence, and occupied, under a lease, the entire floor. Its rooms consisted of one large and one smaller dining room for men only, normally seating approximately 175 and 30 respectively; one dining room normally seating approximately 45 for ladies, with and without male escorts; kitchen and pantry; wash room for men; wash room and powder room for ladies; a foyer in which there was a counter with an attendant for the sale of cigars and tobacco products, and a lounge room for men with the Providence Journal and 7 out-of-town newspapers. All of these rooms were light and airy, adequately and attractively furnished and properly serviced and maintained. The men's dining rooms afforded a wide and attractive view over the water, the city and the surrounding country.

"(b) The club rooms were open only on Mondays through Fridays, with the exception of holidays, between the hours of 11:30 a.m. and 3 p.m., during which period meals, with or without wine or beer, table d'hôte or a la carte, were served in the dining rooms only. The number of per-

sons served meals or food averaged in the neighborhood of 250 daily. These meals were charged to the members who ordered them, and under the by-laws of the plaintiff all indebtedness of a member was payable on or before the 15th day of the month succeeding the month in which the same was incurred. Although the taxes herein involved are for the months of May, June, July and August, 1944, during the entire year ending August 29, 1944, the club dispensed $71,049.44 worth of food, and $819.35 worth of beverages.

"(c) The plaintiff gave no dances, receptions, banquets, teas, musicals, lectures or card parties. It had no facilities for swimming, golf, tennis, squash or other form of athletics, and no radio, victrola, piano, card rooms, pool or billiard rooms or tables, and no game rooms. At these meals there were no speeches and no incidental music and the plaintiff conducted no other form of amusement and no entertainments or social functions for its members. It had no reciprocal arrangements with other clubs.

"(d) During the year 1944 the plaintiff's membership was composed of approximately 600 resident members, 30 non-resident members, and 19 life members. The break down with respect to occupations was roughly as follows: Business 375 (finance 65, manufacturing 220, others 90); Professional 225 (lawyers 110, doctors 15, others 100).

"(e) Attached hereto is a financial statement of the club for the fiscal year 1944, marked Exhibit 1, and a balance sheet as of August 29, 1944, marked Exhibit 2."

The parties also introduced oral testimony and certain exhibits.

For the fiscal year ending August 29, 1944, the Club received income from the following sources:

| | |
|---|---|
| Members' dues | $28,627.10 |
| Initiation fees | 962.50 |
| Ladies privilege cards | 1,440.85 |
| Special assessments | 1,368.80 |
| Total General Income | $32,399.25 |

The restaurant operated at a loss of $5,670.17.

The Club's balance sheet, as of August 29, 1944, showed total assets of a little over $43,000, including cash of nearly $27,000 and furniture and equipment of over $24,000.

§ 1710, 26 U.S.C.A. Int.Rev.Code, §.1710.

"(a) Rate. There shall be levied, collected, and paid—

"(1) Dues or membership fees. A tax equivalent to 11 per centum of any amount paid as dues or membership fees to any social, athletic, or sporting club or organization, if the dues or fees of an active resident annual member are in excess of $10 per year.

"(2) Initiation fees. A tax equivalent to 11 per centum of any amount paid as initiation fees to such a club or organization, if such fees amount to more than $10, or if the dues or membership fees, not including initiation fees, of an active resident annual member are in excess of $10 per year.

§ 1712, 26 U.S.C.A. Int.Rev.Code, § 1712.

"(a) Dues. The term 'dues' includes any assessment irrespective of the purpose for which made, and any charges for social privileges or facilities, or for golf, tennis, polo, swimming, or other athletic or sporting privileges or facilities, for any period of more than six days;" and

Treasury Regulations 43 (1941 Ed.):

"Sec. 101.24 Determination of Character of Club. The purposes and activities of a club or organization and not its name determine its character for the purpose of the tax. Every club or organization having social, athletic, or sporting features is presumed to be included within the meaning of the phrase, 'any social, athletic, or sporting club or organization,' until the contrary has been proved, and the burden of proof is upon it. Every such club or organization, therefore, unless it falls within the express exemption of the Code (see section 101.30), must collect, return, and pay over the tax imposed by the Code, unless and until it has satisfied the Commissioner of Internal Revenue that it is not in fact 'social, athletic, or sporting' * * *. If any such club or organization claims that it is not in fact 'social, athletic, or sporting,' it shall submit to the collector a

copy of its charter or constitution and by-laws, together with a statement showing its actual purposes, activities, practices, and facilities, the character of its expenditures, and such other evidence as may be requested. * * *

"Sec. 101.25 Social Clubs.—Any organization which maintains quarters or arranges periodical dinners or meetings, for the purpose of affording its members an opportunity of congregating for social intercourse, is a 'social * * * club or organization' * * * unless its social features are not a material purpose of the organization but are subordinate and merely incidental to the active furtherance of a different and predominant purpose, such as, for example, religion, the arts, or business. The tax does not attach to dues or fees of a religious organization, chamber of commerce, commercial club, trade organization, or the like, merely because it has incidental social features, but if the social features are a material purpose of the organization it is a 'social * * * club or organization' * * *. An organization that has for its exclusive or predominant purpose religion or philanthropic social service (or the advancement of the business or commercial interests of a city or community) is clearly not a 'social * * * club or organization.' * * *".

Just where to draw the line between those cases that hold certain clubs are not social clubs within the meaning of the statute and the dues not taxable and those which hold certain clubs are social clubs and the dues taxable is rather difficult. For a list of both classes of cases see pp. 29,-505 and 29,506, 1947 Federal Tax Service, Volume 3, Prentice-Hall.

Among the many cases [1] that the taxpayer urges strongly in support of its contention that it is not a social club within the meaning of the statute are Page v. Squantum Ass'n, 1 Cir., 1935, 77 F.2d 918, affirming this court, D.C., 7 F.Supp. 815, and Merchants Club v. United States, Ct.Cl., 66 F. Supp. 126.

I have given careful consideration to the facts in 9(c) of the stipulation, supra, and have noted their similarity to the following facts as stated in Squantum Ass'n v. Page, D.C., 7 F.Supp. 815, 817: " * * * It gave no dances, receptions, teas, musicales, lectures, or card parties. It had no swimming, squash, tennis, golf, or other sporting facilities, and no reciprocal arrangements with other clubs. Nor did it have a radio, victrola, lounge, library, books, magazines, newspapers, or bedrooms. At the dinners and luncheons there were no speeches and no incidental music, and the club provided no flowers or decorations. * * *"

The Government in its brief states: " * * * while many of the reported cases may be helpful, the most recent pronouncements of the Circuit Court of Appeals for the Third Circuit in the case of Duquesne Club v. Bell, 3 Cir., 127 F.2d 363, 143 A.L.R. 1377, certiorari denied 317 U.S. 638, 63 S.Ct. 30, 87 L.Ed. 514, rehearing denied 317 U.S. 706, 63 S.Ct. 152, 87 L.Ed. 563, in which the Government prevailed, and of the Court of Claims in the case of Merchants Club, supra, where the court held for the club, are the most important aids to a proper determination of the issue here involved; * * *".

I concur in this statement.

Merchants Club v. United States, Ct.Cl., 66 F.Supp. 126, 127, 128, is distinguishable from the instant case. The court said:

"Most of the club's resident members are directly connected with the selling of cotton textiles, only 82 of the 484 active mem-

---

[1] Houston Club v. United States, 58 F. 2d 487, 74 Ct.Cl. 640; Whitehall Lunch Club v. United States, 9 F.Supp. 132, 80 Ct.Cl. 350; Tidwell v. Anderson, 2 Cir., 72 F.2d 684; Bankers' Club of America v. United States, 37 F.2d 982, 69 Ct. Cl. 121; Chemists Club v. United States, 64 Ct.Cl. 156; Century Club v. United States, 12 F.Supp. 617, 81 Ct.Cl. 878; Aldine Club v. United States, 65 Ct.Cl. 315; Seattle District No. 3 Mantle Club v. United States, 47 F.Supp. 806, 98 Ct. Cl. 562; Cosmos Club v. United States, 42 F.2d 321, 70 Ct.Cl. 366; Builders' Club of Chicago v. United States, 58 F. 2d 503, 74 Ct.Cl. 595; Washington Club v. United States, 49 F.2d 656, 69 Ct.Cl. 621; Squantum Ass'n v. Page, D.C., 7 F.Supp. 815, affirmed 1 Cir., 77 F.2d 918 and Merchants Club v. United States, Ct.Cl., 66 F.Supp. 126.

bers on January 1, 1945, being engaged in miscellaneous occupations, including insurance, hardware, banking, paper, law, food and other businesses.

\* \* \* \* \* \*

" \* \* \* It is a luncheon club primarily for cotton textile merchants. It provides a place to eat lunch in a district containing no satisfactory public restaurants and it serves as semiofficial headquarters for the selling end of the cotton textile industry. There being no exchange for the marketing of cotton textiles the club is a sort of clearing house of information for that industry. \* \* \*"

The Duquesne Club and the Turks Head Club are each located in the business centers of Pittsburgh and Providence, respectively. The Duquesne Club had about 1700 members composed largely of business men. The Turks Head Club was composed of approximately 600 resident members of whom 375 were classified as business men, 225 as professional men, 30 nonresident members and 19 life members. Both had private dining rooms. The chief use of both Clubs and their facilities were during the luncheon period. The Duquesne Club differed from the Turks Head Club in that it had bedrooms and one small dining room open at night. Both Clubs permitted the use of certain dining rooms by wives of members.

Neither the Duquesne Club nor the Turks Head Club sponsored any social functions, entertainments or amusements and neither held lectures, dances or teas.

The Turks Head Club was organized as a nonbusiness corporation under the laws of Rhode Island and its charter states it was formed: "for the purpose of the maintenance of club rooms for the use of its members, the promotion of the business interests of its members, the advancement of the mercantile and industrial life of the City of Providence and vicinity, and the encouragement of social intercourse, \* \* \*".

It has maintained since its organization club rooms for the use of its members. The record is barren concerning "the promotion of the business interests of its members, the advancement of the mercantile and industrial life of the City of Providence and vicinity, \* \* \*". There is substantial evidence of the purpose—"the encouragement of social intercourse."

The by-laws of the Turks Head Club provide in part that "Gentlemen of good standing \* \* \* shall be eligible to membership; \* \* \* at no time shall the total resident membership be more than seven hundred; \* \* \* Candidates for admission to the Club must be proposed and seconded by two resident members \* \* \*. The names of all candidates with their occupations, addresses and names of their proposers and seconders shall be conspicuously posted on the Club's bulletin board for at least fourteen days prior to any action thereon by the Board of Governors; \* \* \* if there be not more than three negative ballots cast for each candidate, he shall be declared elected to membership; the election of members being a trust delegated to the Governors \* \* \*; all the proceedings in relation to the candidates for membership shall be secret and confidential, and shall not be divulged outside of the Board of Governors."

The by-laws give the Board of Governors disciplinary power over any member "who violates any of the Rules of the Club, or whose conduct, in the opinion of the Board of Governors, shall be considered prejudicial to the welfare, interest, or character of the Club, \* \* \*."

The by-laws provide for officers, committees, Board of Sixteen Governors, meetings, initiation fees and dues, etc.

The Rules of the House Committee of the Turks Head Club provide for the registration of guests, the privilege of the Club by persons not eligible for resident membership "for a term not exceeding five consecutive days at any one time, and not exceeding a maximum of thirty days in twelve months; \* \* \* that private dining rooms may be engaged by private parties of four or more upon application to the Superintendent for use between the hours of 12 o'clock and 3:00 P.M.; a charge of $2.00 will be made. \* \* \*"

They also provide that "upon the written application of any resident member and the

payment by him of the fee hereinafter provided, a ladies' privilege card may be issued by the Secretary for the use of a lady member of the applicant's immediate household not less than eighteen years of age. * * * Each such card shall entitle the holder thereof to the same use of and privileges in that part of the Club Rooms set apart for the use of ladies as those to which members are entitled in other parts of the Club Rooms * * *. A fee of $6.00 shall be payable in connection with the issue of such ladies' privilege card. * * *.

"Ladies not holding ladies' privilege cards shall be admitted to the Club Rooms only when accompanied by a member or by the holder of a ladies' privilege card.

" * * * A fee of $10.00 shall be payable upon the issue of a ladies' privilege card issued to widows and unmarried daughters of deceased members."

I find that the social features of the Turks Head Club are a material purpose of its organization and are not subordinate and merely incidental to the active furtherance of a different and predominant purpose.

I find that the facts in the instant case bring the Turks Head Club within the term "social" used in § 1710 of the Internal Revenue Code.

I feel constrained to follow the law in the Duquesne Club case, supra, 127 F.2d at page 366, 143 A.L.R. 1377, where the court said: "We are prepared to say that an organization, whether incorporated or not, which provides an opportunity for its members to meet each other at mealtimes and partake together of food and drink with conversation on whatever subject pleases them is a social organization. This assumes, of course, an organization the main purpose of which, as is true here, is not other than to provide such an opportunity. Elaborately comfortable quarters may add to the enjoyment of the occasion but do not change its nature. If the members play games together, invite outside guests, either men or women, or add any of the countless things with which people amuse themselves, again the social program becomes more elaborate, but is no more a social program than that of the luncheon of a dozen men about a table without the additional features. * * *".

Judgment, therefore, may be entered for the defendant.