## QUINNIPIACK CLUB v. UNITED STATES.
### No. 41978.

Court of Claims.
Nov. 6, 1933.

William Cogger, of Washington, D. C. (John E. Hughes, of Chicago, Ill., on the brief), for plaintiff.

Fred K. Dyar, of Washington, D. C., and Frank J. Wideman, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

PER CURIAM.

This is a suit for the recovery of $16,599.-01, taxes on initiation fees and dues, alleged to have been erroneously assessed and collected by the Commissioner of Internal Revenue, on the ground that the plaintiff was not a social, athletic, or sporting club within the meaning of section 501 of the Revenue Act of 1926 (26 USCA § 872 note) and section 413 of the Revenue Act of 1928 (26 USCA § 872).

The court, upon the report of a commissioner, makes the following special findings of fact:

1. The plaintiff was organized on March 29, 1871, and incorporated as the Quinnipiack Club of New Haven under a charter granted to it by the General Assembly of the state of Connecticut during the January session of 1878, approved by the Governor February 27, 1878, and accepted at a special meeting of the club on March 6, 1878.

It was provided in the charter that the club should "be located in the city of New Haven, for establishing and maintaining a library, reading room, gallery of art, and for the promotion of city improvements and social intercourse by such lawful means as shall be expedient and proper for the above-named purposes."

2. This suit was brought to recover the sums of $3,288.81, $4,071.82, $4,040.07, $4,-442.00 and $756.31, representing taxes alleged to have been paid on dues and initiation fees for the periods January 1, 1927, to December 31, 1927, January 1, 1928, to December 31, 1928, January 1, 1929, to December 31, 1929, January 1, 1930, to December 31, 1930, and January 1, 1931, to February 28, 1931, respectively. Five separate claims for refund covering said amounts were filed with the collector of internal revenue for the district of Connecticut on April 14, 1931, on the ground that the plaintiff did not qualify as a social, sporting, or athletic club within the meaning of section 801 of the Revenue Act of 1921, section 501 of the Revenue Acts of 1924 and 1926, nor section 413 of the Revenue Act of 1928, inasmuch as it had never been used for dances, card parties, or theatrical performances; that it possessed no golf course, tennis courts, swimming pool, nor outside properties of any character, nor did it in any way cater to the usual athletic or social features of social clubs; that any social features were entirely subordinate and incidental to its predominant purpose of providing a place for daily luncheon to its membership; and that it was composed entirely of business and professional men.

The said claims for refund were rejected by the Commissioner of Internal Revenue on June 27, 1931, in a letter addressed to the plaintiff by the Commissioner on that date, in which the Commissioner held that the dues and fees paid by the plaintiff's members were properly subject to the tax imposed. The several claims for refund, along with the Commissioner's letter of rejection, are in evidence as plaintiff's Exhibits 2, 3, 4, 5, 6, and 8, and are by reference made a part of this finding.

3. During the first several years of its existence the plaintiff occupied rented quarters. Some time prior to 1894 it purchased a fine old four-story and basement residence, located at 986 Chapel street, which had been built in about 1812, and which it occupied as its clubhouse until October, 1931, when it moved into the new clubhouse which it had erected at 221 Church street. On the first floor there were the office, a lounge, two large dining rooms, and several small private dining rooms. The library and reading room and barber shop were on the second floor. Thirteen bedrooms were located on the upper floors. Two bowling alleys were installed in the basement in 1905 or 1906, within a year or two after the plaintiff's restaurant services were first inaugurated in its clubhouse.

The plaintiff's present clubhouse at 221 Church street is located at the edge of New

Haven's business center, and but a moment's walk from the Green. It is built of colonial red brick along traditional Georgian lines, resembling a fine colonial residence and in keeping with the interior, which is invitingly comfortable. The member's entrance opens into a lobby, about which are grouped the office, coat room, wash room, a small reception room, and a broad stairway giving access to the main floor above. The lounge is located on the main floor, overlooking Church street. The comfortable chairs and large open fireplace make the room an attractive gathering place. The library is also on the second floor and also overlooks the street. The governor's room adjoining the library may be used as a second lounge or large card room. Dining facilities are provided on the main floor. The principal dining room will seat 100 comfortably. There are five private dining rooms constructed in such a way that they can be opened into one large room. An open-air dining terrace adjoins the main dining room.

The ladies dining room has a separate entrance from the street through a private lobby and reception room.

The sleeping accommodations for members who may wish to make the club their home and for nonresident members and guests are on the upper floors. There are thirty-six of such rooms attractively furnished, most of them having private baths, either shower or shower and tub. Facilities have been provided for various social and recreational activities. There are four bowling alleys with comfortable space for spectators, and there are handball or squash courts for those who desire more strenuous exercise. Locker and shower rooms are conveniently located adjacent to these facilities in the basement, where activities of this character may go on without disturbance to those in other parts of the clubhouse. There are billiard and pool tables in a handsomely appointed and fully equipped billiard room on the ground floor. Several large card rooms are provided on the second floor.

There is a large room in the basement which has an open fireplace and is decorated with the stuffed heads of wild animals and furnished with furniture brought over from the old clubhouse. It is contemplated that liquor will be served in that room from a nearby serving pantry whenever the sale of liquor is legalized. There was no bar in the old clubhouse. There was, however, a butler's pantry which was used as a serving room, and all drinks were prepared there and served in the dining room or lounge, but in no other part of the club.

4. The plaintiff's constitution provided that its officers should be a president, two vice presidents, who should be elected at each annual meeting, and that it should have a board of fifteen governors who should hold office for the term of 3 years; that every candidate for membership should be at least 21 years of age when proposed, and should be proposed and seconded by two resident members of the club; that the limit of membership should be at the discretion of the board of governors; that the number of resident members should not exceed 375 and the number of nonresident members should not exceed 150.

The by-laws provided that members should be of two classes, viz., resident members, consisting of those who resided or who had their usual place of business in New Haven, and nonresident members, consisting of those who did not have their residence or place of business in New Haven; that officers of the Army and Navy, while on duty in New Haven, might by vote of the board of governors be given the privileges of the club during their official residence in the city; that judges of the Supreme and superior courts, while on duty in New Haven, should be entitled to the privileges of the club; that entrance fee should be $50 for resident members and $10 for nonresident members; that annual dues of the resident members should be $100, and the annual dues of nonresident members should be $24; that the board of directors should at its annual meeting elect a finance committee, a house committee, an entertainment committee, and a committee on art, each to consist of three or more members of the board and such other members as the said board might elect; a committee on admissions, to consist of five members of the board; a committee on nominations, to consist of three members of the board and two other members; and such other committees as it might deem desirable.

The house rules provided that the supply room should be closed at 12:30 a. m. and that on Saturday night both house and supply room should be closed at one a. m.; that no beverages should be served in the parlor or reading room; that no games for money should be allowed in the clubrooms, and no games should be played in the house on Sunday; that members might extend the privileges of the club for a period of two weeks to guests not having their residence or usual place of business at New Haven; that no un-

dergraduate student or minor should be introduced as guest or visitor, and no resident of New Haven should be introduced as a visitor oftener than once in three months.

5. The dining room in the plaintiff's old clubhouse, although open for breakfast and dinner as well as luncheon, was patronized but very little except during the luncheon period. Prior to 1914 or 1915 is was usually the habit of the plaintiff's members to go to their homes for luncheon, and it was not until after that time that the now general custom of lunching at town clubs became popular.

The plaintiff is the oldest and one of the most exclusive and aristocratic of New Haven's town clubs. Its membership is composed of many of the leading professional and business men of New Haven. The club has afforded its members a convenient and satisfactory place to entertain their friends and business associates and to meet and over the luncheon table discuss matters of mutual personal, professional, or business interest, and to read and relax and play cards, pool, or billiards, or bowl, and avail themselves of the recently added facilities for their physical well-being. It appears that many of the plaintiff's members were motivated to join the club by the fact that such membership would enhance their professional and business standing in the community, and that such friendships and contacts as they might make through such membership would inure to their financial advantage. Many committee meetings of a public or semipublic nature, including those of the community chest committees, have been held in the plaintiff's clubhouse. Various committees of several organizations, including the Connecticut Bankers' Association and the New Haven Chamber of Commerce, likewise from time to time held meetings and luncheons in the plaintiff's clubhouse.

6. Most of the plaintiff's members are also members of the New Haven Country Club. The plaintiff has never had a definitely planned entertainment program. It has for a number of years held an annual fall golf tournament and golf dinner. The tournament is held at the New Haven Country Club. The prizes are purchased from funds subscribed by the participants in the tournament, and the expense of conducting the tournament is met in the same manner.

In past years members of the boxing and fencing teams of Yale University from time to time gave exhibitions in the lounge of the old club. In the early part of the present century a group of the club's younger members organized the Quinnipiack Club Minstrels and staged several shows for the entertainment of the members. Women were never admitted to the old clubhouse. The plaintiff's card rooms are seldom used, except for an hour or an hour and a half after the luncheon hour. Relatively few of the plaintiff's members made use of its lounge and library except during that same period. A charge is made for the use of the billiard and pool tables and for bowling. Attendants have always been provided by the club for the billiard and pool tables and to set up the pins in the bowling alleys.

The club has a barber shop for the convenience of its members. The bowling season ordinarily begins about the 1st of November and continues until the middle of March or 1st of April. Ordinarily eighteen or twenty 5-men teams compete in the plaintiff's tournaments. As in the case of the golf tournaments, the participants contribute the funds from which the prizes for the winners of the events are purchased. The fine bowling alleys, handball and squash courts, gymnasium equipped with a punching bag, medicine ball, rowing machine, electric bicycle, pull and chest weights, stall bars, and other usual gymnasium equipment, steam room masseurs, and athletic instructors were provided in the new clubhouse for the convenience of the members and for the purpose of attracting the younger group of men who were just coming along in the community. Although an athletic director is on the club pay roll, his salary is contributed by those members of the club who make use of the athletic facilities.

There was no gymnasium or any athletic facilities provided in the old club, with the exception of the bowling alleys.

7. The plaintiff's library contained files of various daily newspapers, magazines, and periodicals in which its members were interested, including Punch, London Illustrated News, Sketch, American Magazine, Judge, Current History, Scribner's, Harper's, Life, Literary Digest, Liberty, Collier's, Vanity Fair, Country Life in America, Commercial Chronicle, North American Review, etc. The library, while not large, is well selected and contains an excellent collection of old books and papers and historical scrapbooks having particular reference to the early life of New Haven and Connecticut.

8. The plaintiff has collected and possesses one of the finest and most valuable collections of prints of old New Haven outside of the Yale collection. The collection has been acquired by the art committee from

funds voluntarily contributed by members of the club to a special art fund. The respective amounts of their contributions are automatically charged against the accounts of the contributing members, who comprise approximately one-half of the entire club membership. A number of large, valuable oil paintings have been acquired in the same manner. The pictures, as well as the prints, are rather generally of an historic character.

9. The plaintiff's income during the years 1928, 1929, and 1930 was derived from the following sources, in the following amounts:

|  | 1928 | 1929 | 1930 |
|---|---|---|---|
| Dues & entrance fees | $40,016.80 | $40,920.44 | $40,180.34 |
| From restaurant, etc. | 47,396.18 | 46,806.36 | 46,360.40 |
| From rooms.......... | 4,747.50 | 4,347.75 | 3,477.00 |
| From pool & billiards | 651.34 | 590.38 | 478.05 |
| From bowling........ | 623.90 | 831.85 | 749.86 |
| From interest........ | 74.49 | 95.68 | 267.21 |
|  | 93,510.21 | 93,592.46 | 91,512.86 |

During the year ended March 31, 1927, plaintiff expended $25,914.64 for service and salaries, $7,200 for employees' meals, $473.07 on its reading room, $101.39 for entertainment, $162.72 for pool and billiards, and $369.85 for bowling.

For the year ended March 31, 1928, plaintiff expended $4,000 for the salary of its steward, $3,012 for the salaries of office clerks, $9,237.52 for service wages, $2,664 for employees' meals, $453.06 on its reading room, and $661.75 for entertainment.

For the year ended March 31, 1929, plaintiff expended $3,416 for the salary of its steward, $2,792.67 for the salaries of office clerks, $9,084.72 for service wages, $2,664 for employees' meals, $520.80 on its reading room, and $289.71 for entertainment.

For the year ended March 31, 1930, plaintiff expended $3,250 for the salary of its steward, $2,693.50 for salaries of office clerks, $9,604 for service wages, $2,664 for employees' meals, $494.07 on its reading room, and $51.57 for entertainment.

In its March 31, 1930, balance sheet, plaintiff carried its land and buildings at $187,500, its house furnishings at $31,160.53, and its art objects at $17,779.23, or a total of $236,439.76.

10. Although the plaintiff has been a definite and useful factor in the civic, professional, and commercial life of the city of New Haven, and its activities during the period involved herein were largely centered around the luncheon hour, the plaintiff in its inception was, and has since continued to be, primarily a social club for gentlemen, and its main purpose has been to minister to the social enjoyment of its members. Its social activities were not merely incidental to its other activities, but constituted an important and material part of the life of the organization.

Conclusion of Law.

Upon the foregoing special findings of fact, which are made a part of the judgment herein, the court decides as a conclusion of law that the plaintiff is not entitled to recover, and the petition is therefore dismissed.

Judgment is rendered against the plaintiff for the cost of printing the record herein, the amount thereof to be ascertained by the clerk and collected by him according to law.

See Army & Navy Club of America v. United States, 53 F.(2d) 277, 72 Ct. Cl. 684, and Block Hall v. U. S., 57 F.(2d) 918, 74 Ct. Cl. 600.