Campbell, Chief Justice,
delivered the opinion of the court:
By this suit the Aldine Club seeks to recover taxes paid on membership dues under the revenue acts of 1921, 1924, and 1926, 42 Stat. 291, 43 Stat. 321, 44 Stat. 92.' The taxes were paid under protest, and the application duly made to the Commissioner of Internal Revenue for a refund of them was denied. There is no dispute about the facts. The sole question is whether the Aldine Club was a social club, within the meaning of the statutes, for the several years. These are in all material respects the same as section 801 of the revenue act of 1921, reading as follows:
“ That from and after January 1, 1922, there shall be levied, assessed, collected, and paid * * * a tax equivalent to 10 per centum of any amount paid on or after such date, for any period after such date, (a) as dues or membership fees (where the dues or fees of an active resident annual member are in excess of $10 per year) to any social, athletic, or sporting club or organization; * * *.”
The duly authorized regulations of the commissioner m article 3 of Regulations 43, par,t 2, provide, among other *319 things, that the “ purposes and activities of a club and not its name determine its character for the purpose of the tax on dues,” and further the regulation admits, practically, that every club does not come within the statute. But article 3 of these regulations furnished a definition of “ social clubs,” as follows:
“Any organization which maintains quarters, or arranges periodical dinners or meetings, for the purpose of affording its members an opportunity of congregating for social intercourse, is a ‘ social * * * club or organization ’ within the meaning of the act, unless its social features are not a material purpose of the organization but are subordinate and merely incidental to the active furtherance of a different and predominant purpose, such as, for example, religion, the arts, or business. The tax does not attach to dues or fees of a religious organization, singing society, chamber of commerce, commercial club, trade organization, or the like, merely because it has incidental social features, but if the social features are a material purpose of the organization, then it is a ‘ social * * * club or organization ’ within the meaning of the act. An organization that has for its exclusive or predominant purpose religious or philanthropic social service (or the advancement of the business or commercial interests of a city or community) is so clearly not a social * * * club or organization ’ that its possession and use of a building furnished with social-club facilities does not render taxable dues or fees paid to it. Most fraternal organizations are in effect social clubs, but if they are operating under the lodge-system payments to them are expressly exempt.”
Accepting the regulations as embodying the construction of the taxing act given by the Treasury Department, it appears that not its name and inferentially not its charter declarations but its “ purposes and activities ” determine its character for taxation purposes.’ And though there may be social features incident to its general activities, yet if the social feature is a subordinate and merely incidental feature to the “ predominant ” purpose of the organization, it is not a social club. This must be true unless all clubs where people congregate are social clubs, “because practically all clubs may be said to have a feature of the social, using the term as having to do with human intercourse.” Chemists’ Club, *320 decided June 6, 1927, 64 C. Cls. 156. The Aldine Club was organized under the laws of New York in 1889. About ten years thereafter it was merged with an organization known as the Up Town Association under the name of Aldine Association. In November, 1910, it resumed its original name of Aldine Club.
The findings show that the purpose and only function of this club during the years in question has been to furnish to its members a luncheon between stated hours on business days only, and at a moderate cost. It does not furnish breakfasts. The luncheon is provided by a caterer who pays to the club 5 per cent of the turnover on the restaurant business. The club uses the rooms only during the hours 12 m. to 3 p. m. The caterer has the right to rent the rooms after 5 p. m. It occupies, as its quarters, rooms on the fourteenth floor of an office building known as 200 Fifth Avenue. These have never been used for a dance, card party, or theatrical performance. During the period 1923 to 1927 some entertainments have been given in the form of lectures on instructional topics by public men, made during the lunch hour in the main dining room three or four times a year. Manifestly the predominant purpose of this organization is not the cultivation of companionable relations. It furnishes a convenient place where business men may get their luncheons. The facilities provided were adapted to that purpose. Its social features were incidental, and remotely so, to its general or “ predominant purpose.” Its brief characterizes it as “ an exalted lunch room which a certain number of individuals maintain because it is in a convenient neighborhood.” The facts sustain this description. We think it is not a social club within the purview of the statutes and regulations. See City Club of St. Louis v. United States, decided January 3, 1928, 24 Fed. (2d) 743; Chemists’ Club, supra. The plaintiff should have judgment. And it is so ordered.
Moss, Judge; GRAham, Judge: and Booth, Judge, concur.