## WASHINGTON CLUB v. UNITED STATES.

No. H–209.

Court of Claims.

Feb. 10, 1930.

LITTLETON, Judge, dissenting.

The Washington Club, plaintiff, sues to recover taxes paid to the Commissioner of Internal Revenue for the years 1922, 1923 1924, 1925, and 1926 on dues and initiation fees for its members.

The question at issue is whether or not plaintiff is a social club within the meaning of the revenue acts of 1921, 1924, and 1926.

This case having been heard by the Court of Claims, the court upon the report of a Commissioner and the evidence, makes the following special findings of fact:

1. The plaintiff is a club duly incorporated in 1891 under the laws of the District of Columbia. The objects of the club, as stat-

ed in the original charter, have been "The establishment, maintenance, and management of a club for literary purposes, mutual improvement, and the promotion of social intercourse."

2. The plaintiff paid to the collector of internal revenue, Baltimore, Md., as the tax on the yearly dues of its members and as a tax on initiation fees, in accordance with section 801 of the Revenue Act of 1921 (42 Stat. 291) and section 501 of the Revenue Acts of 1924 and 1926 (43 Stat. 321, 44 Stat. 92), the following sums:

For the year 1922................$1,476.12
For the year 1923................ 1,539.11
For the year 1924................ 1,533.04
For the year 1925................ 1,542.49
For the year 1926 for first five
    months...................... 1,397.34
                                  _____
                                  7,488.10

3. On June 21, 1926, the plaintiff filed with the Commissioner of Internal Revenue the claim for refund of said payments totaling $7,488.10. The Commissioner rejected said claim for refund on March 31, 1927.

4. The plaintiff has at all times borne true allegiance to the government of the United States and has not in any way voluntarily aided, abetted, or given encouragement to rebellion against the government of the United States. The plaintiff is the sole owner of this claim and has not sought redress in the courts or before Congress prior to this action.

5. There are approximately 600 members, classified as life, debenture, resident, and nonresident. Literary or artistic qualifications are not stated in the constitution and by-laws as necessary to admission. The membership is limited to ladies.

6. The club membership is composed of women with literary and musical inclinations and talents, also of artists, lecturers, and research workers. Among the members are found the wives of Army and Navy officers, wives of Members of Congress, and of leaders in every walk in life.

7. The club property was acquired in a trade of properties at a valuation of $109,-950, has increased in value, and for taxation purposes the land is now appraised at $30 a foot, and the improvements at $66,000.

8. The furniture and equipment are carried at a valuation of $1,800. Some items, such as pictures, tables, rugs, and piano, are borrowed. The club building contains 23 rooms. The ground floor consists of an entrance hall, fronting on K street, ladies'

dressing room, and two small reception or cloakrooms, to the rear of which are quick kitchens, pantries, storerooms, and servants' dining room. There is also a stairway entrance on Seventeenth street leading to the second floor of the main building, flanked by cloakrooms and reaching to the assembly hall. At the top of the K street stairway there is a large parlor or drawing room running the full length of the Seventeenth street dimension of the building. Across the K street frontage there is another large room where the board of managers meet. On the second floor, just at the head of the stairs, is a somewhat smaller room, generally called the dining room, through which ingress is had to the assembly hall. On the third floor the library is located in two rooms of the same size as the drawing room and board of managers' room mentioned above, an office for the librarian, and four bedrooms with necessary toilet and storage facilities. On the fourth floor are five other bedrooms, one being a divided room; the entire building is suitably furnished.

There are eight bedrooms, one used by the treasurer-manager, one by the secretary, one by the servants, and a divided room used by an old lady from Boston, the rest being used by transient members or their guests, but not being used constantly. In the fall, when members are returning to town and before opening their houses, the rooms are used more than at other times.

9. There is a small elevator reaching as far as the third floor, on which the library is located. The library, easily and quickly accessible either by the stairway or elevator, appears fully equipped for quiet, comfortable reading and research. There are more than 6,000 volumes handily arranged, classified, indexed, and catalogued; works of fiction comprise about one-third of the club library, and purchases of new fiction are about equal to purchases of nonfiction. It is an organized library. There has been a paid librarian, not a member of the club, during the past 21 years. Her salary was $82 per month, besides which she received lunches, dinners, uniforms, a months' vacation with pay, and various other perquisites. There always has been a library committee composed of 10 or more members which devotes considerable time to planning and carrying out the activities of the library. In addition to using a large space for the care and handling of the library, the club expends approximately $600 yearly for the purchase of new books. The expense of the library for the year 1928 was "a little over $1,700." The library "cost over

$1,500 in 1926, and in 1927 the library cost $1,600." Members are permitted to withdraw books from the library. Books of fiction may be kept out one week; nonfiction, two weeks. There is a popular demand for nonfiction books. Once a month the library committee makes a selection of new books to be added to the library. Twenty-seven magazines are paid subscriptions by the club, and several magazine subscriptions, also many books, including private collections, are donated.

The books in the library are classified as follows:

| | |
|---|---:|
| Fiction | 2,030 |
| Literature | 500 |
| French classics | 500 |
| Biography | 950 |
| Travel | 390 |
| History | 290 |
| Art | 75 |
| Drama | 187 |
| Poetry | 165 |
| Religion | 90 |
| Miscellany | 180 |
| War books | 270 |
| Reference | 140 |
| Carpenter case of noted women | 331 |

The library is an important feature of the club, and its rooms are much frequented by members engaged in research work as well as those interested in general reading. Many literary people not members of the club use the facilities of the library and the Literary Society of Washington holds its meetings there. Many members of the club are also members of the Literary Society of Washington.

10. Two bridge clubs, known as the Ellwell and Trophy Clubs, each comprising about 30 members, exist within the club; they have nothing to do with the club proper, except that the bridge players are members of the club and they pay for the use of the room and for the tea and refreshments afterwards. Perhaps 8 or 10 tables are used, and there is nothing in the testimony to show how often or seldom they play.

11. The club does not maintain a restaurant or serve meals regularly, although meals can generally be provided except on Tuesdays, if ordered in advance; some of the cooking being done in the club and some prepared by caterers from the outside. Breakfast may be obtained by members or guests staying in the club bedrooms. The club has no lunchroom, maintaining the kitchen for the use of the personnel of the club. There is a profit of several hundred dollars a year from club luncheons. A charge is made for all luncheons, whether for guests or members.

12. All portions of the club building, except the library and treasurer's quarters, may be rented. There is an established rate of rentals. Members, some of the oldest users of the club premises, and those who use it regularly are given a slightly reduced rate. The rents amounted to $6,173.53 from January 1 to December 31, 1928. The renting of the clubrooms is for the purpose of revenue entirely. Many of the leading civic and patriotic organizations of the city of Washington use the facilities of the clubrooms for their regular weekly or monthly meeting for which they pay the established rate of rentals. Among the various organizations renting and using the facilities of the club during recent years, are the D. A. R., George Washington University Alumni, the Literary Society, South Carolina State Society, Georgia State Society, Society of Lafayette, Society of Natives of the District of Columbia, Massachusetts State Society, Audubon Society, the Political Study Club, and other similar organizations.

13. The net profit accruing to the club for the year 1928, including all revenues derived from initiation fees, dues of members, rental, and profits realized from luncheons, teas, etc., was the sum of $32.27.

14. Guest cards are issued by the library committee, for which a charge of 50 cents is made for each guest. Many guest cards are issued for the regular Tuesday morning lectures. These guest cards bring in a small revenue to the club, afford nonmembers an opportunity of hearing the lectures, and help in increasing and recruiting the membership of the club.

15. The club sponsors and supports a course of instruction in foreign languages, including French, Italian, and Spanish. This club activity, started during the World War, has proven to be very popular with club members, and is well supported; classes sometimes including as many as 35 or 40 persons. The language instructors are usually foreign born. A charge of $5 for 10 lessons is made to club members and $6 for 10 lessons to nonmembers; the extra dollar paid by nonmembers being used to defray expenses, such as light, heat, etc. In connection with the French classes, a French tea is given every year, at which the use of the French language is compulsory. The play or other entertainment for the evening is in French. French poetry is recited, and an effort is made to keep the event as strictly French as possible.

16. Every New Year's Day the club gives a reception in the late afternoon to members and guests, which is a dignified formal affair. During the Christmas holidays and Easter holidays each year a tea dance is arranged for the sons and daughters of members, for which a charge is made for the purpose of revenue. These affairs are not well attended.

17. From the very beginning the club has conducted on Tuesday mornings of each week an announced lecture. These lectures are the outstanding activity of the club and are always largely attended. Many persons, not members of the club, are given guest cards and permitted to attend the lectures. After the lecture the members engage in a general discussion of the lecture. Simple refreshments are served gratis, consisting of a cracker or small sandwich, or doughnut, coffee or tea, not a luncheon. No luncheon is served at the club on that day because of the large crowds. A committee arranges these Tuesday morning events. Lectures are given on a wide range of subjects, a list being in evidence for all given during the period from 1920 to 1928. Musical clubs of Washington are sometimes procured for the Tuesday morning programs. The programs consist of classical music only, interspersed usually with instructive talks on various musical instruments and the technique of music generally. Lectures are also given on political science, psychology, economics, constitutional history, biography, travel, etc. During recent years many eminent men and women, in almost every branch of learning, have appeared and given lectures before the club membership.

18. Miss Clara McQuown conducts an annual course of 20 to 22 talks or lectures on national and international affairs, under the general title of current history. They are given on Friday morning at the club, sponsored and encouraged by the club, announced in the club bulletins, and the club affords the use of the assembly hall without rental, furnishes a butler and other facilities, and the lectures are open generally to anyone who cares to come. A number of tickets are also given to people interested in particular subjects who could not otherwise afford to come. During the first two years the talks were given in the afternoon also, for the benefit of those who are employed and unable to come in the morning and notices are sent from the Department of Education by Assistant Superintendent Haycock to the various schools in the District, and the lectures are attended very largely by teachers. The morning attendance is between 40 and 80. The charge is nominal, $6.50 for 15 lectures; single admission, 65 cents.

19. The club is registered in the Social Register as one of those clubs to which the subscribers to the Register belong.

20. In many cases the club has encouraged young musicians and young artists by furnishing a platform, although it does not give any scholarship.

21. The Washington Club has never allowed the use of its platform for propaganda purposes. Its purpose is and has been to sponsor activities and put on programs educational in their nature. Aside from the regular course of lectures, it endeavors each month to feature a program of special literary merit, one entirely musical, one where pictures along educational lines are the main feature, and another in harmony with the other three. These regular monthly events are very popular and are also largely attended.

The Washington Club platform is well known and established. Many requests are received from lecturers and speakers to be permitted the use of its platform. These requests are carefully scrutinized and are accepted or rejected as they do or do not come within the educational and cultural purposes and activities of the club.

22. The plaintiff club does not give regular dances, except in the case of one or two tea dances a year for the younger people of the members' families. The clubrooms, however, may be rented by members or outsiders for dances, teas, and other entertainments.

23. The predominant purposes of the Washington Club are the improvement of its members along educational and cultural lines, and its main activities are conducted with a view to the accomplishing of such purposes.

F. Regis Noel, of Washington, D. C., for plaintiff.

Fred K. Dyar, of Washington, D. C., and Herman J. Galloway, Asst. Atty. Gen. (McClure Kelley, of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and WILLIAMS, GREEN, GRAHAM, and LITTLETON, Judges.

WILLIAMS, Judge. Plaintiff sues to recover taxes paid for the years 1922, 1923, 1924, 1925, and the first five months of 1926, on the initiation fees and dues of its members. The taxes were collected under the provisions of section 801 of the Revenue Act of 1921 (42 Stat. 291) and section 501 of the

Revenue Acts of 1924 and 1926 (43 Stat. 321, 44 Stat. 92).

Section 801 of the Revenue Act of 1921, 42 Stat. 291, reads:

"That from and after January 1, 1922, there shall be levied, assessed, collected, and paid, in lieu of the taxes imposed by section 801 of the Revenue Act of 1918, a tax equivalent to 10 per centum of any amount paid on or after such date, for any period after such date, (a) as dues or membership fees (where the dues or fees of an active resident annual member are in excess of $10 per year) to any social, athletic, or sporting club or organization; or (b) as initiation fees to such a club or organization, if such fees amount to more than $10, or if the dues or membership fees (not including initiation fees) of an active resident annual member are in excess of $10 per year; such taxes to be paid by the person paying such dues or fees: Provided, That there shall be exempted from the provisions of this section all amounts paid as dues or fees to a fraternal society, order, or association, operating under the lodge system. In the case of life memberships a life member shall pay annually, at the time for the payment of dues by active resident annual members, a tax equivalent to the tax upon the amount paid by such a member, but shall pay no tax upon the amount paid for life membership."

Section 501 of the Revenue Acts of 1924 and 1926 is substantially the same as the section above quoted of the act of 1921.

The defendant offered no testimony necessitating a consideration of the case on the evidence adduced on behalf of the plaintiff.

The sole issue presented is whether the plaintiff club was properly classified by the Commissioner of Internal Revenue as a social club within the meaning of the acts under which the taxes were imposed.

Article 5 of Treasury Regulations promulgated for the administration of the revenue acts imposing the taxes in question reads:

"Any organization which maintains quarters or arranges periodical dinners or meetings, for the purpose of affording its members an opportunity of congregating for social intercourse, is a 'social * * * club or organization,' within the meaning of the act, unless its social features are not a material purpose of the organization, but are subordinate and merely incidental to the active furtherance of a different and predominant purpose, such as, for example, religion, the arts, or business."

In the Aldine Club v. United States, 65 Ct. Cl. 315, the court said:

"And though there may be social features incident to its general activities, yet if the social feature is a subordinate and merely incidental feature to the 'predominant' purpose of the organization, it is not a social club. This must be true unless all clubs where people congregate are social clubs, 'because practically all clubs may be said to have a feature of the social, using the term as having to do with human intercourse.' "

The purposes of the Washington Club as stated in its charter are:

"The establishment, maintenance, and management of a club for literary purposes, mutual improvement, and the promotion of social intercourse."

The membership of the club is limited to ladies and now numbers about 600. The club owns its own quarters, an old but substantial building, formerly a residence, located at the intersection of Seventeenth and K Streets N. W., in Washington. It is comfortably but not luxuriously furnished.

The club does not maintain a restaurant and does not regularly serve meals to its members. Breakfasts, luncheons, etc., can usually be had if ordered in advance, but they are not a regular feature of the club's activities, and when such are furnished it is solely with a view of obtaining revenue, and not "for the purpose of affording members an opportunity of congregating for social intercourse."

The main activities of the club center in the library and its use by members and in the regular Tuesday morning lectures.

The library consists of about 6,000 volumes. It is carefully selected and contains standard works on practically every subject. It is patronized by members engaged in research work as well as by those who seek improvement in the general study and reading of books and magazines.

The outstanding feature of the club's activities is the regular Tuesday morning lecture. These lectures are largely attended and have given the club a wide reputation as an educational and cultural organization. The lectures cover a wide range of subjects and have brought to the club platform many eminent men and women, recognized authorities on the subjects discussed by them. While occasionally lectures are given on popular and entertaining subjects, they are the exception, and the lectures in the main are educational in character.

In addition to the regular Tuesday morning lecture, the club each year arranges a se-

ries of lectures, about 22 in number, on current events. In these lectures current topics of national and international interest and importance are discussed. These lectures are given on Friday mornings and are frequently repeated in the afternoon for the benefit of members and nonmembers who are not able to attend the morning lecture.

Announcement of these lectures is made in the schools of the District and many teachers avail themselves of the opportunity to attend. The evidence shows these lectures are very popular, are largely attended, and have been of great educational value.

Another activity of the club is the foreign-language classes which it sponsors. Lessons are given in French, Italian, and Spanish. These classes are open to nonmembers as well as the members, a fee being charged each person to pay the teachers and defray expenses.

Competent teachers, foreign ·born as a rule, are employed, and classes are maintained both for beginners· and for students more advanced. Conversational and grammar practice courses are maintained. A French tea is given each year by the classes studying the French language, and a play is put on where French is exclusively spoken. The foreign-language classes have proven a very popular activity of the club, and many people, club members and others, have availed themselves of the opportunity offered to gain a knowledge of one or more foreign language.

It is true the Washington Club has certain social features, such as its annual New Year's reception to members and guests, and the tea dances which its members give for their sons and daughters during the Christmas and Easter holidays, but these social features are clearly incidental and subordinate to the predominant purposes of the club.

This being true, the plaintiff club is not a social club within the meaning of section 801 of the Revenue Act of 1921 (42 Stat. 291) and section 501 of the Revenue Acts of 1924 and 1926 (43 Stat. 321, 44 Stat. 92). Aldine Club v. United States, 65 Ct. Cl. 315; Chemists' Club v. United States, 64 Ct. Cl. 156; Bankers' Club of America v. United States, No. K–145, 37 F.(2d) 982, decided to-day.

Section 3228 of the Revised Statutes, as amended by section 1112 of the Revenue Act of 1926, 44 Stat. 9, 115 (26 USCA § 157), provides that claims for refund shall be presented to the Commissioner of Internal Revenue "within four years next after the payment of such tax, penalty, or sum." The claim for refund in this case was filed with the Commissioner of Internal Revenue June 21, 1926, and as $1,280.41 of the total sum of taxes paid during the year 1922 was paid before June 21 of that year, or more than four years prior to the filing of the claim for refund, said amount of $1,280.41 is barred.

Plaintiff is therefore entitled to recover judgment in the sum of $6,207.69. And it is so ordered.

BOOTH, Chief Justice, and GREEN and GRAHAM, Judges, concur.

LITTLETON, Judge, dissents.