## WOMEN'S UNIVERSITY CLUB OF SEATTLE v. POE.

### No. 20417.

District Court, W. D. Washington, N. D.
May 28, 1931.

Supplemental Opinion July 9, 1931.

Bronson, Jones & Bronson, of Seattle, Wash., for plaintiff.

Anthony Savage, U. S. Atty., and Jeffrey Heiman, Asst. U. S. Atty., both of Seattle, Wash., for defendant.

BOURQUIN, District Judge.

Defendant imposed and collected federal income taxes in respect to plaintiff's initiation fees and dues from May, 1925, to July, 1929, on the theory that it was a "social club" within section 872, title 26, USCA, and plaintiff, contending otherwise, sues to recover them.

The statute imposes taxes upon "any social, athletic, or sporting club," and exempts any "fraternal society, order, or association, operating under the lodge system," and any "local fraternal organization among the students of a college or university." The commissioner construed the term "social" club to include "any organization which maintains quarters or arranges periodical dinners or meetings, for the purpose of affording its members an opportunity for social intercourse, * * * unless its social features are not a material purpose of the organization but are subordinate and merely incidental to the active furtherance of a different and predominant purpose." In evidence are all of plaintiff's records, which disclose its origin, activities, and history. It was organized and incorporated in 1914 "to secure a closer union and cooperation of college and university women in maintaining a club for the purpose of broadening the acquaintance of college women of Seattle, renewing and stimulating the ideals of undergraduate days, cultivating interest in the sciences and liberal arts, advancing the cause of general education, and for social enjoyment.

"Second. To acquire a club house and such other real and personal property as may be desirable in order to carry into effect the purposes of this association, to sell, lease or mortgage the same, and in general to do any and all things convenient or desirable for the purposes of the club." Article III, section 1, Articles of Incorporation.

Its membership is restricted to those who have been resident undergraduates "in good standing for at least two years in any university or college accepted by the Board of

Trustees" and "earned junior standing." Article II, section 1, By-Laws.

"Any woman who is widely known because of service to the cause of education, or because of distinguished work in science, literature, art or philanthropy, may be elected as an honorary member." Article II, sections 3, 4, By-Laws.

The by-laws provide for usual standing committees, including one on literature and art, a lecture committee, and an entertainment committee which "shall provide and have charge of all social entertainments of the club." Article VII, sections 1 to 4, By-Laws.

Of dual purpose, cultural and social, it suffices to say the evidence is both thereof have been zealously pursued with equal if alternating enthusiasm, to the very substantial credit and benefit of the club, its members, and their families and friends, and of the city of Seattle. But the torch of culture by these superior women carried aloft in a somewhat jazz-darkened age has been less abstract than applied to the improvement of social relationship, the ultimate object of all genuine culture, and their success is notable and enduring.

■ Finding no fault with the commissioner's construction of the statute, as aforesaid, plaintiff urges it comes within his exception, in that its social activities are not material but merely incidental and to further its cultural purposes; that is to say, that even "college brains" must be bribed with the sugar of games, dances, parties, etc., to induce them to imbibe continued· dosage of culture.

But, as before stated, the evidence seems otherwise. Plaintiff is a social club within the statute, though also cultural. Its situation is akin to that of him who follows two vocations, and in consequence must pay taxes or license for both or for whichever is subject thereto. In its brief plaintiff asserts that its dues were $25 per year, and after June 29, 1928, no tax was imposed, but that prior thereto having received amounts for dues payable subsequent to the date aforesaid, and upon the tax was collected in amount alleged, $571.40. If so, it was an illegal exaction and recoverable herein, but evidence thereof, if present, escapes observation, has not been pointed out.

Judgment for defendant.

### Supplemental Opinion.

■ In the decision the court observed that the law imposing taxes upon plaintiff's dues expiring June 29, 1928, any taxes upon dues collected prior thereto for time subsequent, that is to say, in advance, would be illegal and recoverable, if proven. Counsel now stipulate taxes were so imposed and paid in amount $578.83. The statute imposing the tax is sections 501, 502, Revenue Act Feb. 26, 1926, and expressly stipulates that subsequent thereto the tax shall be paid *"monthly"* on *"any amount paid on or after such date, for any period after such date, as dues."* Italics court's, for reference.

The point was not argued, and in decision the court consulted only sections 872, 873, title 26, USCA, which fail to include the words in italics as above.[1]

Whether or not the observation aforesaid would be sound had the law as it seemed lacked said italicized words, it seems clear in the light of them it is unsound.

Evidently their purpose was taxes accrued and paid monthly on dues actually received in the previous month, whether belated, current, or advanced. Judgment as before. ·

---

[1] The text of sections 872, 873 of title 26, USCA, is from the Revenue Act of May 29, 1928, c. 852, §§ 413, 414, which amended the Act of Feb. 26, 1926, and omitted the words "monthly" and "on or after such date, for any period after such date, as dues." See the explanatory historical notes following these sections.