## TOWN CLUB OF ST. LOUIS v. UNITED STATES.

### SAME v. BECKER, Collector of Internal Revenue.

#### Nos. 9711, 9712.

Circuit Court of Appeals, Eighth Circuit.

Jan. 22, 1934.

Marion C. Early, Waller Edwards, and Myrtle B. Wood, all of St. Louis, Mo., for appellant.

Louis H. Breuer, U. S. Atty., of Rolla, Mo., Bryan Purteet, Asst. U. S. Atty., of St. Louis, Mo., and E. Barrett Prettyman, Gen. Counsel, Bureau of Internal Revenue, and L. H. Baylies, Atty., Bureau of Internal Revenue, both of Washington, D. C., for appellees.

Before STONE, SANBORN, and VAN VALKENBURGH, Circuit Judges.

VAN VALKENBURGH, Circuit Judge.

Appellant in cause No. 9711 sues the United States at law to recover the sum of $6,281.84 for taxes alleged to have been illegally paid during a period from April 9, 1924, to December 19, 1925. In cause No. 9712 the suit is against the Collector of Internal Revenue to recover the sum of $10,522.14 for taxes alleged to have been illegally paid during the period beginning January 16, 1926, and ending March 31, 1928. Demand for refund was made and refused. A jury was waived and the two cases were by consent consolidated for trial and submitted to the court upon pleadings and proofs. The legal effect of the facts in the two cases is the same.

The taxes involved were assessed and collected under the provisions of section 801 of the Revenue Act of 1921 (42 Stat. 291), which provides:

"That from and after January 1, 1922, there shall be levied, assessed, collected, and paid, in lieu of the taxes imposed by section 801 of the Revenue Act of 1918, a tax equivalent to 10 per centum of any amount paid on or after such date, for any period after such date, (a) as dues or membership fees (where the dues or fees of an active resident annual member are in excess of $10 per year) to any social, athletic, or sporting club or organization; or (b) as initiation fees to such a club or organization, if such fees amount to more than $10, or if the dues or membership fees (not including initiation fees) of an active resident annual member are in excess of $10 per year; such taxes to be paid by the person paying such dues or fees: Provided, That there shall be exempted from the provisions of this section all amounts paid as dues or fees to a fraternal society, order, or association, operating under the lodge system. In the case of life memberships a life member shall pay annually, at the time for the payment of dues

by active resident annual members, a tax equivalent to the tax upon the amount paid by such a member, but shall pay no tax upon the amount paid for life membership."

This section was carried, without material change, into section 501 of the Revenue Acts of 1924 and 1926 (26 USCA § 872 note), and may be referred to as the statutory law applicable to the cases under consideration. The appellant is an organization of St. Louis, Mo., women. It has approximately 2,000 members—perhaps more. As alleged in its petition, the club was organized under article 10, of chapter 33, Revised Statutes of Missouri 1909, and amendments thereto (Mo. St. Ann. c. 32, art. 10, § 4996 et seq., p. 2288 et seq.), which provide for the organization of benevolent, religious, scientific, fraternal-beneficial, educational, and miscellaneous associations.

The articles of association, article 4, state the object and purpose of the club as follows:

"Article 4. The object and purpose of the Association shall be for the discussion of questions of commercial, industrial, civic, and social interest; for the encouragement of good reading and the cultivation of art and literature and rational social amusement; to aid and assist the industrial, commercial, civic and social development of the City of Saint Louis, and more especially as they pertain to women; to provide, establish, and maintain a clubhouse or club rooms with library and other facilities appropriate and convenient for the entertainment of its members and their guests; and for the conduct of lawful and rational out-of-door play games and exercises; provided, however, that the Association as such shall have no connection with partisan politics or partisan organizations, nor shall it ever be committed to the endorsement of any particular measure or measures."

The club's constitution, article 2, provides:

"The objects of this Association shall be to provide and maintain an organized center for the investigation, discussion and improvement of the civic, business and social affairs of the City of Saint Louis, and more especially as they pertain to women, and to provide club room, library and other conveniences for its members; provided that the organization as such shall never be committed to the endorsement of any particular measure."

Regulation No. 43, part. 2, article 5, of the Treasury Department which gives the departmental construction of section 801 of the Revenue Act of 1921, reads as follows:

"Article 5. Social Clubs.—Any organization which maintains quarters, arranges periodical dinners or meetings, for the purpose of affording its members an opportunity of congregating for social intercourse, is a 'social * * * club or organization' within the meaning of the act, unless its social features are not a material purpose of the organization but are subordinate and merely incidental to the active furtherance of a different and predominant purpose, such as, for example, religion, the arts, or business. The tax does not attach to dues or fees of a religious organization, singing society, chamber of commerce, commercial club, trade organization, or the like, merely because it has incidental social features, but if the social features are a material purpose of the organization then it is 'social * * * club or organization' within the meaning of the act. An organization that has for its exclusive or predominant purpose religion or philanthropic social service (or the advancement of the business or commercial interests of a city or community) is so clearly not a 'social * * * club or organization' that its possession and use of the building furnished with social club facilities does not render taxable dues or fees paid to it. Most fraternal organizations are in effect social clubs, but if they are operating under the lodge system or are local fraternal organizations among the students of a college or university payments to them are expressly exempt."

This law was long administered by the department in accordance with the foregoing definition, and "the substantial re-enactment in later acts of the provision theretofore construed by the Department is persuasive evidence of legislative approval of the regulation" (Brewster v. Gage, 280 U. S. 327, 337, 50 S. Ct. 115, 117, 74 L. Ed. 457); "for Congress is presumed to have legislated with knowledge of such an established usage of an executive department of the government." National Lead Co. v. United States, 252 U. S. 140, 147, 40 S. Ct. 237, 239, 64 L. Ed. 496; United States v. Bailey, 9 Pet. 238, 256, 9 L. Ed. 113.

The question presented, then, is whether appellant was, during the periods when the taxes sued for were assessed and exacted, a "social, athletic, or sporting club or organization" within the meaning of said section 801 of the applicable Revenue Act, and so subject to the taxes levied, or whether its

functions were civic and/or educational, and so exempt. The court found the issues in favor of the government. Appellant requested neither findings of fact nor conclusions of law, contenting itself with motions to modify those made by the court and for a new trial. As a strict matter of procedure, the court made no specific findings. It discussed in its opinion certain facts deemed necessary to warrant the conclusion reached, and said that such findings and conclusions might be taken in lieu of a formal finding of facts and conclusions of law. In keeping with the liberal attitude of the trial court we may, perhaps, be justified in departing from the established procedural rule and inquire whether such findings support the judgment entered.

■ The so-called fact findings contained in the opinion follow:

"The evidence in the case at bar preponderantly disclosed that the activities of plaintiff were predominantly civic and educational, as contradistinguished from social. But this evidence came, for the most part, from officers of plaintiff who have had occasion to be wholly and closely familiar with plaintiff's activities only since 1928, or later; whereas, the period from April 9, 1924, and up to March 3, 1928, is the period involved in these controversies.

"To make out its contentions respecting the activities during the period between April 9, 1924, and March 3, 1928, the defendant offered many, if not all, of the issues of 'The Informant' (plaintiff's official publication), as also many—perhaps all—programs embodying plaintiff's activities between the dates last above-mentioned. None of these publications by plaintiff, subsequent to March, 1928, was offered, for the very simple reason that the Club's activities for the latter period were not in dispute, nor in issue here. I have, however, carefully examined the programs of the Club as issued by it between the years 1924 and 1928. These show that within the period named there were given or seemingly fostered by the Club, that is, given under its auspices, ten dances, five musicales, two picnics, nine swimming parties, five teas, fourteen card parties, two shows, five miscellaneous parties, luncheons, and so forth, and eleven other functions which may or not have been either educational or social, or mixed.

"During the same period there were a total of ninety-seven functions which, in my opinion, were educational, artistic or civic.

"So, the totals stand, fifty-two clearly social; ninety-seven clearly educational or civic or artistic, and eleven doubtful or mixed.

"The Club had a lounge, used also as a library; a piano—perhaps three; a swimming pool, and maintains, and maintained, large and well-furnished quarters, including a kitchen and dining rooms, wherein meals are served to members and their guests."

Of course the court, in its opinion, merely summarized and digested the evidence adduced at the hearing, but it cannot be said that the facts so found do not substantially support the conclusion reached. That conclusion and its basis is thus stated:

"I think the rule of the Department intends, and the proper construction of the statute is, that if any material, that is, important, substantial, part of the Club's activities (but not necessarily as much as a moiety thereof) are social as contradistinguished from the remaining non-social activities, it is taxable; otherwise, of course, it is not taxable.

"As said already, thorough-going reliance cannot be put on the language of either the Articles of Association or the Constitution, or both. But both of these instruments may be considered in connection with the actual functions and activities of the plaintiff. So here, not only do the Articles of Association and Constitution of the Club prescribe as among its objects the providing and maintenance of 'an organized center for the investigation, discussion and improvement of the * * * social affairs of the City of St. Louis * * * as they pertain to women and to provide club rooms, library and other conveniences for its members', but the programs and publications promulgated by the Club show that during the period here in controversy, either thirty-nine per cent. or fifty-eight per cent. approximately (according to whether the eleven doubtful activities of the Club are allocated to the one side or to the other) constituted matters which were social rather than civic, artistic or educational.

"I am not able to say that such a per cent. of total activities does not constitute a material part of the Club's functions."

■ The decision turns upon the question of whether the actual social activities of a club of this nature are so extensive as to form a material purpose of the association, or are merely subordinate and incidental to a predominate purpose. That purpose, as stated in the articles of association and constitution, while not conclusive, should, of course, be considered, and, it will be observed, as stated by the trial court, that both articles and constitution "give the same prominence

to the social phase that they give to the educational and civic phases." Necessarily each case of this nature must be controlled by its own peculiar facts. For this reason cases will be found which support exemption from this tax. However, we think the facts before us support the conclusion reached by the trial court, and in the following cases among others: Quadrangle Club v. United States (C. C. A. 7) 64 F.(2d) 80; Fleming v. Reinecke (C. C. A. 7) 52 F.(2d) 449, 80 A. L. R. 1293, certiorari denied, 284 U. S. 689, 52 S. Ct. 266, 76 L. Ed. 582; Women's University Club v. United States (Ct. Cl.) 50 F.(2d) 469; Women's University Club of Seattle v. Poe (D. C.) 52 F.(2d) 447; Army and Navy Club of America v. United States (Ct. Cl.) 53 F.(2d) 277, certiorari denied, 285 U. S. 548, 52 S. Ct. 405, 76 L. Ed. 939; Union League Club of Chicago v. United States (Ct. Cl.) 4 F. Supp. 929, 935, decided November 6, 1933.

In the case last cited the summary of the court upon the facts before it seems peculiarly applicable here:

"Upon all of the evidence the court finds as an ultimate fact that the predominant purpose and the activities of the plaintiff are civic, philanthropic, or charitable, and that its main purposes have been those expressed in the object clause of its certificate of incorporation, but that the functions of the club in administering to the social enjoyment, physical well being, and entertainment of its members were not merely incidental to its main purpose, but constituted a very important and material part of its activities and were necessary to its prosperity."

■ Appellant filed no motion for judgment. No action was taken to procure a ruling upon any contention that, under the evidence, the judgment must be for appellant—plaintiff below. Therefore, we are not called upon to review the record to ascertain whether the evidence produced supports the quasi findings of the trial court. However, a glance at that evidence, which is preserved in the transcript, but serves to emphasize the social character of the club and its material activities. The club had a seven-story and basement building. The first and second floors were rented by it for use as shops. The club quarters embraced a lounge and library containing many volumes of reading matter (together with current newspapers and periodicals), dining room, cafeteria, private dining rooms, and swimming pools. The "Informant," the club's official publication,

recites the following attractive social features:

"a. A spacious lounge, with open fire and balcony, to meet guests and friends.

"b. A reading nook with magazines, papers and writing desks.

"c. Dining rooms, cafeteria service (two floors): Private dining rooms, where luncheons, dinners and teas may be given.

"d. A swimming pool, open the year round—modern and well equipped.

"e. Rest room with couches and dressing table. The programs are arranged to appeal to a large variety of tastes. Lectures by nationally known men and women on the great events and topics of the day; book reviews, teas, musicales, card parties, dances and dramatic performances."

The reports of the program committees emphasize these social features above all other club activities. A further recital of the evidence would seem unnecessary. It follows that the judgments below should be affirmed and it is so ordered.