**TIDWELL v. ANDERSON, Collector of Internal Revenue.**

No. 413.

Circuit Court of Appeals, Second Circuit.

Aug. 17, 1934.

---

[1] Note 1.

L. HAND, Circuit Judge, dissenting.

Frank J. Wideman, Asst. Atty. Gen., and J. Louis Monarch and Louise Foster, Sp. Assts. to Atty. Gen., for appellant.

Greene & Hurd, of New York City (James L. Dohr, of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The plaintiff appellee, as president of the Men's Faculty Club of Columbia University, an unincorporated association of seven or more persons existing under section 12 of the New York General Associations Law (Consol. Laws, c. 29), as added by Laws 1920, c. 915, § 6, sued the collector of internal revenue for the Third district of New York to recover taxes paid on its dues and initiation fees collected from its members from July 1, 1924, to June 30, 1928. The parties stipulated for trial by a jury of one, and at the close of the evidence each side moved for a directed verdict. The plaintiff's motion was granted, and judgment was entered on the ordered verdict. There is no dispute as to the amount of the judgment if the plaintiff is entitled to recover at all.

The taxes were collected under the provisions of the Revenue Acts of 1924 and 1926, which are adequately shown for present purposes by quoting section 501 of the Revenue Act of 1924, 43 Stat. 321 (see 26 USCA § 872 note):

"Sec. 501. On and after the date this title takes effect there shall be levied, assessed, collected, and paid, in lieu of the taxes imposed by section 801 of the Revenue Act of 1921, a tax equivalent to 10 per centum of any amount paid on or after such date, for any period after such date, (a) as dues or membership fees (where the dues or fees of an active resident annual member are in excess of $10 per year) to any social, athletic, or sporting club or organization; or (b) as initiation fees to such a club or organization, if such fees amount to more than $10, or if the dues or membership fees (not including initiation fees) of an active resident annual member are in excess of $10 per year; such taxes to be paid by the person paying such dues or fees: Provided, That there shall be exempted from the provisions of this section all amounts paid as dues or fees to a fraternal society, order, or association, operating under the lodge system, or to any local fraternal organization among the students of a college or university. In the case of life memberships a life member shall pay annually, at the time for the payment of dues by active resident annual members, a tax equivalent to the tax upon the amount paid by such a member, but shall pay no tax upon the amount paid for life membership."

The applicable regulations under both acts are found in 43 T. R. (part 2) arts. 4 and 5. So far as material, they are:

"Art. 4. *Determination of character of club.*—The purposes and activities of a club and not its name determines its character for the purpose of the Tax on Dues. Every club or organization having social, athletic, or sporting features is presumed to be included within the meaning of the phrase, 'any social, athletic, or sporting club or organization,' until the contrary has been proved, and the burden of proof is upon it. Every such club or organization, therefore, unless it falls within the express exemption of the Act (see art. 7, below) must collect, return, and pay over the tax imposed by the act, unless and until it has satisfied the Commissioner of Internal Revenue that it is not in fact 'social, athletic, or sporting' within the meaning of the Act as defined in these regulations. * * *

"Art. 5. *Social clubs.*—Any organization which maintains quarters or arranges periodical dinners or meetings, for the purpose of affording its members an opportunity of congregating for social intercourse, is a 'social * * * club or organization' within the meaning of the Act, unless its social features are not a material purpose of the organization but are subordinate and merely incidental to the active furtherance of a different and predominant purpose, such as, for example, religion, the arts, or business. The tax does not attach to dues or fees of

a religious organization, singing society, chamber of commerce, commercial club, trade organization, or the like, merely because it has incidental social features, but, if the social features are a material purpose of the organization, then it is a 'social * * * club or organization' within the meaning of the Act. * * * "

The basic facts are not seriously disputed, and may be summarized as follows: Election to membership in the organization is by the executive committee from candidates holding positions either on the faculty or in the administrative departments of the University, and membership is limited to those who have thus been elected and either continue to hold the positions which originally made them eligible or have resigned those positions and remained as special members. Nearly 90 per cent. of the men holding such positions in the University were members during the period involved in this action. The executive committee also has the authority to provide for special memberships for less than one year and to admit as special members former officers of the University as well as visiting professors from other educational institutions and from other countries. It may also grant honorary memberships.

The requirements of the constitution and by-laws are strictly enforced. The constitution of the club provides "that its object shall be to promote the unity and effectiveness of the administrative and teaching forces among the men of the University, to provide opportunity for recreation and for greater cooperation in their academic work, and to offer opportunity for the constant and informal consideration of the problems of University life and work." The organization is governed by officers and committees elected or appointed in conformity with the constitution and by-laws.

The club is located in a five-story building owned by the University at the corner of Morningside drive and 117th street in New York City. The University gives the club the use of the building together with heat and light free and also makes all outside repairs without charge.

In the basement there are lockers for members, an indoor golf range, and a recreation room for employees. On the first floor are the hallway, a cloakroom and toilet for women, the men's room, a pool and billiard room, cigar stand, and a small committee room. The second floor has a large lounge with card and chess tables, an entertainment room, and service pantries. A large dining room, two private dining rooms, a bedroom, and service pantries are on the third floor. The fourth floor has a dining room with a porch and the kitchen.

The dining rooms are used to serve breakfasts, luncheons, and dinners, though comparatively few breakfasts are served, and luncheon is the most popular meal. No formal faculty meetings are held in the club building, but members meet and discuss such topics as they may desire when and as they please.

In 1925–26 they gave an opening dinner to welcome new members, held three dances, provided four addresses by members on subjects of which they had special knowledge, gave a musical entertainment and a Christmas party for children. In 1926–27 they had an opening dinner, a dinner to the trustees, a Christmas party, and three dances. In 1927–28 the club provided an opening dinner, held five dances and a Christmas party. Possibly a few other entertainments may have been given during these years.

Though the women of the University have social organizations of their own and there is a social club whose membership consists of both men and women, there is no faculty club in the University, other than this one, whose membership is confined to men.

There is no proof that meetings of the club are held regularly or otherwise solely to discuss educational problems confronting the members, although it is apparent that an opportunity is afforded for members to meet each other as they may wish, and no doubt the conversation often turns to University affairs and kindred subjects. No doubt also the club plays a beneficial role in faculty life at Columbia. The action of the University in providing the house indicates that, but, as social relaxation is doubtless as important to the members of the faculty of an educational institution as it is to other people, that fact is colorless as proof of the social character, or otherwise, of the club.

The cases on this subject, though somewhat numerous, are not decisive. They turn, as they must, on a comparative analysis of the activities of the organizations concerned and the attempt to strike a balance between what are considered social and what are nonsocial. This has resulted in freedom from federal taxation in instances of which the following are fairly illustrative: Cosmos Club v. United States (Ct. Cl.) 42 F.(2d) 321; The Cordon v. United States (Ct. Cl.) 46 F.(2d) 719; Builders' Club of Chicago v. United States (Ct. Cl.) 58 F.(2d) 503;

Houston Club v. United States (Ct. Cl.) 58 F.(2d) 487; City Club of St. Louis v. United States (D. C.) 24 F.(2d) 743; Washington Club v. United States (Ct. Cl.) 49 F.(2d) 656; and Bankers' Club of America, Inc., v. United States (Ct. Cl.) 37 F.(2d) 982. Taxation has been upheld in cases like Faculty Club of the University of California v. United States, 65 Ct. Cl. 754; Union League Club of Chicago v. United States (Ct. Cl.) 4 F. Supp. 929, 935; Quadrangle Club v. United States (C. C. A.) 64 F.(2d) 30; Women's University Club of Seattle v. Poe (D. C.) 52 F.(2d) 447; Fleming v. Reinecke (C. C. A.) 52 F.(2d) 449, 80 A. L. R. 1293; Army and Navy Club of America v. United States (Ct. Cl.) 53 F.(2d) 277; Women's University Club v. United States (Ct. Cl.) 50 F.(2d) 469; and Town Club of St. Louis v. United States (C. C. A.) 68 F.(2d) 620.

The test of taxability is not whether a club has any social features at all, but whether or not such activities, viewed, of course, in the light of all the circumstances of its existence including the declared purpose of the organization as shown by its constitution and by-laws, if their provisions are enforced, are what in fact provide the real reason for its existence and enable it to secure members and retain them. Another way to put the problem is "whether the social features of the club involved are merely incidental or whether, on the other hand, they are a material purpose of the organization." Union League Club of Chicago v. United States, supra.

Both parties having moved for a directed verdict, the legal question presented is now somewhat circumscribed, as it is in every such instance, by the judgment of the District Court. Here we are confined to deciding whether the facts found support the judgment, and, if so, whether the findings were based on any substantial evidence. Beuttell v. Magone, 157 U. S. 154, 15 S. Ct. 566, 39 L. Ed. 654; Williams v. Vreeland, 250 U. S. 295, 39 S. Ct. 438, 63 L. Ed. 989, 3 A. L. R. 1038.

The trial judge found, inter alia, that:

"6. The controlling purposes and the controlling activities of the club are exclusively in furtherance of the educational work of the University.

"7. The club has no activities outside the club-house and except to the extent essential to render the club-house sufficiently attractive to promote the assembly there of the administrative and teaching personnel of the University who are engaged in the conduct of the University as a seat of learning, the club has no activities whatever.

"8. Sleeping accommodations are meagre, consisting only of a room for the steward and a suite reserved for guests of the University, but rarely used at all.

"9. The principal meal is luncheon, when it is customary for groups from a single department of the University or professionally occupied on a single subject to sit at the same tables, so as there to discuss or dispose of University matters of mutual concern.

"10. The service of meals, the provision of space for games prevalent among professional men while relaxing and the arrangement of occasional, but infrequent, entertainments for members—sometimes accompanied by their wives and children—are confined to what may be reasonably estimated as needed in order to induce the members to gather at the club-house, so as thereby to assist in the efficient discharge of strictly University functions.

"11. The social purposes of the club are merely incidental to the accomplishment of the University's own purposes.

"12. In design, as well as in practice, the club is but an integral part of the organization of the University as an educational institution."

It should be noticed that the statute does not tax clubs generally. Only social, sporting, and athletic clubs are taxed. The issue is not one of exemption from a tax but rather one of the scope of the statute. The findings quoted fairly show that this club does not fall within the coverage of the statute and consequently support the judgment. Its primary purpose appears from these findings to be to aid the educational work of the University and its social activities to be limited to the reasonable requirements incident to its being a source of help to its members in their profession of teaching.

Some of these findings consist of inferences drawn from the basic facts which appeared in evidence, but they are no less binding upon us if they are fair deductions from those facts considered in connection with all of the evidence. There is no way to determine that except to read the record, and, after doing so, we are satisfied that the findings were justified.

Judgment affirmed.

L. HAND, Circuit Judge (dissenting).

The statute does not define what a social club is; we are to interpret the gloss

of the regulation. I doubt if it is possible to make any general statement which will not beg the question; and perhaps for this reason the decisions have left the test chaotic, though hitherto faculty clubs have been held taxable. Faculty Club v. U. S., 65 Ct. Cl. 754; Quadrangle Club v. U. S., 64 F.(2d) 80 (C. C. A. 7). I think they ought to be. Of course every academic activity is subordinate and incidental to the main purpose of the college, which is at least avowedly educational. There would be no faculty clubs, if there were no colleges; they are organized to make a teacher's life pleasanter on the notion that he will be a better teacher if it is. But the club's activities taken by themselves are substantially the same as those of any other club, at least any other professional club, and it is these which control, not the profession which underlies them and makes them appropriate. The incidental social features which the regulation has in mind seem to me to be the rooms of a singing society and the supper that follows a rehearsal; or a series of dinners given by a society for the promotion of peace, or the propagation of the gospel, before the members begin to discuss and resolve. I do not believe that a teachers' club ought to be any more exempt than an engineers' club or a lawyers' club.