**KRUG v. RASQUIN, Collector of Internal Revenue.**

No. 7234.

District Court, E. D. New York.

Dec. 24, 1937.

Rabenold & Scribner, of New York City (Charles E. Scribner and Freeland F. Penney, both of New York City, of counsel), for plaintiff.

Leo J. Hickey, U. S. Atty., of Brooklyn, N. Y. (J. Wolfe Chassen, Asst. U. S. Atty., of Brooklyn, N. Y., of counsel), and James W. Morris, Asst. Atty. Gen. (Andrew D. Sharpe and Donald J. Marran, Sp. Assts. to Atty. Gen., of counsel), for defendant.

MOSCOWITZ, District Judge.

This is an action by George Krug, a member of the Bakers Club, Inc., a club incorporated under the Membership Corporation Law of the State of New York, Consol.Laws, c. 35, to recover back the sum of $20 which was paid as a tax on his dues in the club for the period beginning January, 1932, and ending January, 1935. The money sought to be recovered was paid under protest. The case was heard by the court, counsel having waived a jury trial.

The tax was imposed under the provisions of section 501(a) of the Revenue Act of 1926, 44 Stat. 92, as amended by the Revenue Act of 1928, § 413(a), 45 Stat. 864, 26 U.S.C.A. § 950(a), which provides as follows:

"There shall be levied, assessed, collected, and paid a tax equivalent to 10 per centum of any amount paid—

"(1) As dues or membership fees to any social, athletic, or sporting club or organization, if the dues or fees of an active resident annual member are in excess of $25 per year; or

"(2) As initiation fees to such a club or organization, if such fees amount to more than $10, or if the dues or membership fees, not including initiation fees, of an active resident annual member are in excess of $25 per year."

The contention of the plaintiff is that the Bakers Club is a business organization and not a social club, and therefore not subject to the tax levied by section 501(a).

The object of the club is set forth in its certificate of incorporation as follows:

"First: The particular object for which the corporation is formed is to promote fellowship among ourselves and others, our associates and successors, who are engaged or interested in the profession of baking, and for that purpose to establish

and maintain a clubhouse in New York City."

The membership numbered approximately 235, and was limited to persons engaged in the baking industry and allied fields. Of these 235, 160 were resident members. The remainder were scattered all over the United States. Most of the major bakeries of the country were represented in the membership. By "allied fields" was understood those directly or indirectly related to the baking industry by virtue of supplying products or services valuable therein, such as machinery, automobile tires, insurance, and ingredients. A booklet prepared by the secretary listed the members alphabetically with a brief notation following each name explaining the member's relationship to the baking industry.

Membership dues were $50 a year for resident members, and $25 for nonresidents. Initiation fees were $100 for residents, and $50 for nonresidents. In many instances the initiation fee and dues were paid by the company with which the member was associated at the time. In a great many cases where members resigned from the club, they had occasion at the same time to sever their relations with the industry.

At the times concerned herein, the club maintained small quarters totaling about fifteen hundred square feet in area on the fourteenth floor of the Fraternity Club Building in New York. The furniture was owned by the Fraternity Club Building with the exception of a piano for which $35 was paid, a radio donated by a member, and two desks. A small library was comprised chiefly of trade journals and technical books relating to the baking industry. Meals were served from the kitchen of the Fraternity Club Building and were paid for in cash. The club now maintains comparable quarters in the Commodore Hotel.

Before the Bakers Club was organized, the only organizations for bringing together members of the baking industry were the American Baking Association and the New York Bakers Association, which only met once a year. The Bakers Club served as a meeting place for the baking industry. Every day a few members met there for lunch and occasionally remained for some card playing. Once a month there was a regular luncheon meeting at which business was transacted, and problems of interest were discussed, such as products used, taxation, and legislation. A public speaker was heard usually on a topic of interest to the baking industry. These monthly meetings were attended by 60 to 130 members; they started between 12:30 and 1:00 p. m. and continued to about 2:30 p. m. In the summer, meetings were held at some conveniently located golf club. During the day, the members would play golf and in the evening they would be joined by other members for dinner.

The club fostered organizations among its members to deal with the technical aspects of baking. These were the Society of Cereal Chemists and the Holes-in-Bread Club. The NRA organization for the baking industry made its headquarters at the club as long as the NRA organization functioned.

One of the most important activities of the club was its charitable work. The club served as a clearing house for apportioning demands for free bread which came in from churches, civic organizations, and other associations. All requests received by the baking companies were sent to the secretary of the Bakers Club, who apportioned the requests ratably among the various companies.

To determine whether a club is to be classified as "social" or as "business" necessarily demands a close examination of the activities of the organization in question, and with an infinitely large number of possible variables, precedents are suggestive rather than determinative in ascertaining the point at which the line is to be drawn. In many instances it has not been easy to draw the dividing line. The following cases are illustrative of instances in which it has been held that the particular club was a social organization and subject to the tax: Army and Navy Club of America v. U. S., 53 F.2d 277, Ct.Cl., certiorari denied 285 U.S. 548, 52 S.Ct. 405, 76 L.Ed. 939; Century Association v. Anderson, D.C., 10 F.Supp. 1005; Chance v. U. S., 9 F.Supp. 1011, Ct.Cl.; Chicago Engineers' Club v. U. S., 9 F.Supp. 680, Ct.Cl.; Faculty Club of University of California v. U. S., 65 Ct.Cl. 754; The Lambs v. U. S., 8 F.Supp. 737, Ct.Cl., certiorari denied 297 U.S. 713, 56 S.Ct. 589, 80 L.Ed. 999; Fisler v. U. S., 66 Ct.Cl. 220, certiorari denied 279 U.S. 836, 49 S.Ct. 251, 73 L.Ed. 984; Quadrangle Club v. U. S., 7 Cir., 64 F.2d 80; Town Club of St. Louis v. U. S., 8 Cir., 68 F.2d 620; Fleming v. Reinecke, 7 Cir., 52 F.2d 449, 80 A.L.R. 1293; Wichita Com-

mercial & Social Club Ass'n v. U. S., 2 F. Supp. 476, Ct.Cl.; Women's University Club v. U. S., Ct.Cl., 50 F.2d 469; Women's University Club of Seattle v. Poe, 52 F.2d 447, D.C.W.D.Wash.

In the following cases the club was held not subject to the tax: Aldine Club v. U. S., 65 Ct.Cl. 315; Bankers' Club of America, Inc., v. U. S., 37 F.2d 982, Ct.Cl.; Builders' Club of Chicago v. U. S., 58 F. 2d 503, 505, Ct.Cl.; Century Club v. U. S., 12 F.Supp. 617, Ct.Cl.; Chemists' Club v. U. S., 64 Ct.Cl. 156; City Club of St. Louis v. U. S., D.C., 24 F.2d 743; The Cordon v. U. S., 46 F.2d 719, Ct.Cl.; Cosmos Club v. U. S., 42 F.2d 321, Ct.Cl.; Tidwell v. Anderson, 2 Cir., 72 F.2d 684, 687; Houston Club v. U. S., 58 F.2d 487, Ct.Cl.; Los Angeles City Club v. Welch, 44 F.2d 239, D.C. S.D.Cal.; Page v. Squantum Ass'n, 1 Cir., 77 F.2d 918; Two-Thirty-Three Club v. Welch, D.C., 2 F.Supp. 963; Washington Club v. U. S., 38 F.2d 130, Ct.Cl.

Assistance is to be derived, however, from certain general classifications to be found in the Regulations and cases. Article 35 of Regulation 43 provides:

"Determination of character of club.— The Act includes not only 'clubs' but also 'organizations' of a social, athletic, or sporting character. The purposes and activities of a club and *not its name* determine its character for the purpose of the tax. Every club or organization having social, athletic, or sporting features is presumed to be included within the meaning of the phrase, 'any social, athletic, or sporting club or organization,' until the contrary has been proved, and the burden of proof is upon it. Every such club or organization, therefore, unless it falls within the express exemption of the Act (see art. 38), must collect, return, and pay over the tax imposed by the Act, unless and until it has satisfied the Commissioner of Internal Revenue that it is not in fact 'social, athletic, or sporting' within the meaning of the Act and as defined in these regulations. * * *"

Article 36 of Regulation 43 provides:

"Social clubs.—Any organization which maintains quarters or arranges periodical dinners or meetings, for the purpose of affording its members an opportunity of congregating for social intercourse, is a 'social * * * club or organization' within the meaning of the Act, unless its social features are not a material purpose of the organization but are subordinate and merely incidental to the active furtherance of a different and predominant purpose, such as, for example, religion, the arts, or business. The tax does not attach to dues or fees of a religious organization, chamber of commerce, commercial club, trade organization, or the like, merely because it has incidental social features, but, if the social features are a material purpose of the organization, then it is a 'social * * club or organization' within the meaning of the Act. An organization that has for its exclusive or predominant purpose religion or philanthropic social service (or the advancement of the business or commercial interests of a city or community) is clearly not a 'social * * * club or organization.' Most fraternal organizations are in effect social clubs, but if they are operating under the lodge system, or are local fraternal organizations among the students of a college or university, payments to them are expressly exempt."

■ In considering the status of the Mens Faculty Club of Columbia University, the Circuit Court of Appeals of this circuit said in the case of Tidwell v. Anderson, supra: "The test of taxability is not whether a club has any social features at all, but whether or not such activities, viewed, of course, in the light of all the circumstances of its existence including the declared purpose of the organization as shown by its constitution and by-laws, if their provisions are enforced, are what in fact provide the real reason for its existence and enable it to secure members and retain them. Another way to put the problem is 'whether the social features of the club involved are merely incidental or whether, on the other hand, they are a material purpose of the organization.'"

■ Viewed in this perspective, the Bakers Club is not a social club within the meaning of the statute. The few social activities in which the club engaged were purely incidental and afforded at most a companionable means of assembling, for purposes of discussion of problems of common business interest, those who were united by a bond of business activity, but hardly by a bond of social interests.

On a very similar set of facts, but one in which the social aspects were much more evident than those in the instant case, the court held that the Builders' Club of Chicago was not a social club. In Builders' Club of Chicago v. U. S., supra, the court

said: "We think it quite clear that no one would join this club for social purposes, and while the by-laws state that one of the objects of the club is 'for the cultivation of friendly and social relations among its members,' it appears from the evidence that such social relations were merely incidental to the predominant purpose of the club and that the predominant purpose of the organization was not social."

Counsel for the defendant have emphasized the fact that the club was incorporated "to promote fellowship," and proceed through a series of dictionary definitions until they conclude that "fellowship" has tacitly within it the "social" concept. This, however, unduly limits the area usually embraced by the word "fellowship." "Fellowship" signifies, as well, an association of persons having the same occupations or interests.

Moreover, whether a club is a "social" one or not is not to be determined wholly by viewing its corporate purposes as set forth in the abstract. Consideration must be given to the manner in which the club operated and the activities in which it engaged. When viewed in this light it is impossible to give "fellowship," as used in the charter, wholly, or even substantially, social connotations.

Considering the picture as a whole, the Bakers Club is not a social club within the meaning of the statute here concerned.

Judgment for the plaintiff.

Settle findings and decree on notice.